OLIN J. SWEET, Appellant, v. SECURITY SAVINGS BANK OF PERRY et al., Appellees.

**BANKS AND BANKING:** Certificates of Deposit—Illegal Issuance.
1   Certificates of deposit issued by a savings bank in payment or exchange for promissory notes when the bank has no funds with which to pay for the notes are absolutely void in the hands of any holder.

**BILLS AND NOTES:** Fraud—Evidence. Evidence held to present a
2   jury question on the issue of fraud in the inception of a negotiable certificate of deposit.

**BILLS AND NOTES:** Holdership in Due Course—Jury Question. The
3   extraordinary discount allowed in the negotiation of a promissory note, and the unusualness of the transaction in general, may very clearly create a jury question on the issue of holdership in due course.

**Headnote 1:** 7 C. J. p. 874.     **Headnote 2:**  8 C. J. p. 1065.   **Headnote 3:**  8 C. J. p. 1063.

*Appeal from Dallas District Court.*—J. H. APPLEGATE, Judge.

OCTOBER 27, 1925.

ACTION at law, to recover on a certificate of deposit. Cause tried to a jury, with verdict for the defendant. From the judgment entered, the plaintiff appeals.—*Affirmed.*

*White & Clarke,* for appellant.

*W. H. Winegar, George J. Dugan, Harry Wifvat,* and *Ben J. Gibson,* Attorney-general, for appellee.

DE GRAFF, J.—Plaintiff, alleging himself to be a holder in due course, sues as indorsee, to recover judgment on a negotiable certificate of deposit, in words and figures, to wit:

"SECURITY SAVINGS BANK

"Perry, Iowa. Feby. 1/22 No. 4107.

"George Wegen has deposited in this bank five thousand and no/100 dollars, $5,000.00 payable to the order of self in current funds on return of this certificate properly endorsed 12 months after date with interest at 5 per cent per annum. No interest after maturity. M. M. Heptonstall, President. Not subject to check. No redemption before maturity."

Three defenses in separate counts are stated in the answer: (1) That there was no consideration for the issuance of the certificate, and that said certificate was illegal, as no deposit had been made at the time of its issuance, and

1. BANKS AND BANKING: certificates of deposit: illegal issuance.

that defendant bank, through its president, had no authority under the law to contract the indebtedness or to create liability as evidenced by the certificate; (2) that the payee, George Wegen, obtained said certificate through fraudulent representations; (3) that the certificate issued by reason of a fraudulent conspiracy between the president of the defendant bank and the payee of said certificate. These issues, under the evidence, were properly submitted to the jury, under instructions that are not subject to legal criticism.

To avoid repetition, the material facts may be grouped in the answers to three questions which logically arise in the analysis of the propositions relied on by appellant for a reversal.

First:  Was the certificate of deposit, upon its issuance, illegal and void?   Second:  Was the issuance of the certificate of deposit the result of fraudulent representation or of a conspiracy to defraud?   Third:  Has the plaintiff sustained the burden imposed upon him to prove the bona fides in the negotiation and purchase of the certificate by him?   Of these in their order.

I.  Was the certificate of deposit upon its issuance illegal and void?

At the time the payee Wegen received the certificate in suit, several other certificates were issued in exchange for notes aggregating $12,500.   Three notes were furnished by Wegen to the bank, and bore date May 26, 1922.   One of these notes for $4,000 was signed by H. H. Bates, one for $5,000 signed by George Wegen, and one for $4,000 signed by Alma Wegen.   No cash was deposited in the bank at the time the certificates were issued.   No cash was paid by the bank for the notes received. The bank did not have sufficient cash on hand at that time to purchase said notes, and was making no loans.   In fact, at and prior to the commencement of this action, on August 16, 1923, the bank was in charge of Robert L. Leach, state superintendent of banking, as receiver.

The appellee is a savings bank, and under the law of Iowa could exercise no power not conferred upon it by law.   It could contract no indebtedness except for certain purposes defined in the statute, to wit:  For necessary expenses in managing and transacting its business, for deposits, and to pay depositors.   No other liabilities could lawfully be incurred, except in pursuance to an order by its board of directors previously adopted.   Section 1855-a, Code Supplement, 1913 (Section 9222, Code of 1924).   See *Peet v. Des Moines Sav. Bank,* 190 Iowa 1020.

Clearly, the issuance of the certificate under the circumstances of this case created a bank indebtedness which was not within the purview of the statute.   The certificate simply evidenced a loan, and not a deposit.   *Henderson v. Farmers Sav. Bank,* 199 Iowa 496.   See, also, *State ex rel. Carroll v. Corning Sav. Bank,* 139 Iowa 338.   If we assume that the verdict of the jury in this case was predicated on the defense pleaded in the first count of the answer, then it may not be disturbed.   The

principle announced in *Henderson v. Farmers Sav. Bank,* supra, is controlling.

II. Was the issuance of the certificate of deposit the result of fraudulent representation or of a conspiracy to defraud?

The major part of the testimony offered on this trial has to do with a showing of fraud and conspiracy. We will not incumber the opinion with an array of facts bearing on this

2. BILLS AND NOTES: fraud: evidence.

proposition. The only explanation offered why the certificates of deposit, including the one in suit, were issued for the three notes given by the payee Wegen, was a statement made by the president of the bank, M. M. Heptonstall, that Wegen had done him a favor, and he wanted to reciprocate and raise the sum for Wegen on these notes. Each of these notes had written upon its face: "Secured by 1st R. E. mtge."

It appears that the mortgage in reference was given by Dr. I. O. Pond and wife upon certain Minnesota land, the title to which was not in Pond at that time or thereafter. Heptonstall knew this. Apparently Pond had a contract for the purchase of the land from Wegen, who also held a doubtful title. President Heptonstall did not retain possession of the mortgage in his bank, but placed it in the custody of the Valley National Bank of Des Moines; and on the very day the certificate of deposit in question was issued, he wrote a letter to C. T. Cole, Jr., vice president of the Valley National Bank, directing him to turn over the abstract of title and the mortgage to George Wegen. This was done.

The evidence further shows that Heptonstall knew that the makers of the notes were not financially responsible. · It is obvious, under the record facts, that the payee Wegen could not have recovered against the defendant bank, had he been plaintiff in a suit on the certificate.

III. Has the plaintiff sustained the burden imposed upon him to prove the bona fides in the negotiation and purchase of the certificate by him?

If the certificate of deposit was issued without authority of law, and was therefore illegal and void, "no action can be maintained thereon for any purpose." *Henderson v. Farmers Sav.*

3. BILLS AND NOTES: holdership in due course: jury question.   *Bank,* supra. If the certificate was the consummation of a conspiracy to defraud, as alleged, and the allegation is sustained by sufficient proof, then the burden was on the plaintiff to establish the bona fides. Section 9519, Code of 1924. Was a jury question presented in this particular? Clearly so.

The certificate was purchased by plaintiff on May 26, 1922, which was the date the certificate issued to Wegen, although it bore date on its face February 1, 1922. It is not shown where the certificate was during the interim, but the fair inference is that it was antedated. The certificate bore 5 per cent interest, and was purchased by plaintiff from one J. L. Tennant, who acted as a broker for Wegen. Plaintiff purchased it at a discount of $550. Plaintiff was entitled to receive, therefore, at the maturity of the paper $5,250, or $800 as interest for eight months upon an investment of $4,450, or more than 25 per cent per annum on the money invested. This is not all. In addition to the liberal discount, plaintiff retained from the purchase price $350 that Tennant owed him, and the broker received $900 from the proceeds of the sale.

Tennant, as a witness for plaintiff, testified that he and Wegen had offices in the same building in Des Moines, and used the same reception room; that he received the certificate from Wegen with directions to sell it, and on the same day, after its indorsement by Wegen, he sold it to plaintiff, who also maintained an office in Des Moines; that two checks were given by plaintiff, one in favor of Tennant, for $900, and the other in favor of Wegen, for $3,200; that discount was allowed to plaintiff in the sum of $550; that other items of credit in the settlement included the payment of a note of Tennant's to plaintiff in the sum of $275, and a debt of $75 owed plaintiff on a contract; that Tennant reported the conversation he had with plaintiff; and that Wegen knew nothing about what Tennant owed plaintiff.

"He [Wegen] was simply to pay me $1,250 and I was to do what I wanted with the $1,250. He approved my taking $1,250 out of the proceeds."

It is further shown that plaintiff never interviewed or

talked with Wegen concerning this transaction, and the transaction of the purchase covered but a few minutes.

To determine the question of good faith of a purchaser of negotiable paper, no precise rule can be formulated. However, if conflicting inferences may be drawn from the facts, viewed individually or collectively, then the jury must decide. *Commercial Sav. Bank v. Colthurst,* 195 Iowa 1032. We will not substitute our own conclusions on a fact question for those of a jury, when the evidence is sufficient to take the case to the jury and sustain a verdict. *Second Nat. Bank v. Scanlon,* 196 Iowa 1305.

In the instant case, the jury was entitled to take into consideration the time when the certificate of deposit was issued by M. M. Heptonstall, as president of the defendant bank; the amount of said certificate; the rate of interest it bore; the time of its maturity; the date of its negotiation; the circumstances under which it was negotiated, and by whom; the discount exacted and allowed, and whether the same was a usual, customary, and ordinary discount under such circumstances; what notice or information, if any, plaintiff had with reference to the circumstances under which the certificate was issued; and whether the facts and circumstances attending the negotiation would cause a reasonably careful and prudent business man to make inquiry with reference to the time, place, manner, and conditions under which the certificate was issued; together with all other facts and circumstances disclosed by the proof bearing on the matter in issue. The jury was so instructed, and the charge meets our approval.

The evidence is amply sufficient to sustain the verdict, and the judgment entered is—*Affirmed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.