## THE STATE v. MONTGOMERY.

1. **Criminal Law:** FALSE PRETENSES: INDICTMENT. An indictment for obtaining money under false pretenses considered and held sufficient.

2. ——: ——: EVIDENCE. Evidence of matters preceding the obtaining of money by false pretenses considered and held admissible as relating to a part of the transaction.

3. ——: ——: WHAT CONSTITUTE. While a false promise to repay will not alone sustain an indictment for obtaining money under false pretenses, it may, when coupled with a false representation as to property owned by the person making it.

4. ——: ——: ——. The fact that a false representation made by a defendant was not such as would deceive a shrewd and experienced man will not constitute a defense, when the person intended to be deceived thereby was in fact deceived.

| | |
|---|---|
| 56 | 195 |
| 86 | 222 |
| 56 | 195 |
| 112 | 20 |
| 56 | 195 |
| 113 | 702 |
| 56 | 195 |
| 128 | 549 |
| 56 | 195 |
| 132 | 473 |

*Appeal from Wapello District Court.*

THURSDAY, JUNE 9.

THE defendant, H. A. Montgomery, was convicted of the crime of obtaining money under false pretenses, of one Frizzell. Judgment having been rendered upon the verdict, he appeals.

*Morris J. Williams*, for appellant.

*Smith McPherson, Attorney General*, for the State.

ADAMS, CH. J. The defendant demurred to the indictment. The demurrer was overruled, and the defendant assigns the overruling as error.

*1. CRIMINAL law: false pretenses: indictment.*

The defendant was indicted jointly with one Thomas Davis. The indictment charges that

Montgomery and Davis, by false pretenses and with intent to defraud, obtained eighteen dollars from Frizzell; that they falsely represented to Frizzell that Davis had certain goods in possession of the Wabash, St. Louis & Pacific Railroad Co., at Ottumwa, Iowa, to be shipped to Sedalia, Mo., on the same train with Frizzell, and would return said money to said Frizzell when they got to Booneville, Mo.; that said Davis had no goods in possession of said railroad company, and had no freight to pay to said company for the transportation of goods or property; that upon representations so made said Frizzell was induced to part with his said money, believing such representations to be true, when in fact they were false, and were made designedly, and with intent to defraud said Frizzell.

The first objection raised to the indictment is that it is not shown that the goods had any value.

We think it was not necessary to charge that the goods had value. The theory of the charge is not that Frizzell was induced to part with his money in reliance upon the goods as security, but by reason of the supposed exigency of a fellow traveler.

It is objected further that the indictment does not show that Davis had no goods, but merely that he had no goods in the possession of the railroad company. To this we think that the same answer may be made as to the first objection.

It is further objected that the said false pretense is frivolous, and would deceive no one who was not imbecile. Yet the indictment charges, in substance, that the false pretense did deceive Frizzell; that it was made with the design of obtaining his money, and that it had that effect. In our opinion the indictment is sufficient.

The defendant assigns as error the admission of certain evidence. As preliminary to the consideration of it, it is necessary to state in a general way the facts of the case as disclosed by the evidence.

The prosecuting witness, Frizzell, was a resident of Des Moines. On the 9th day of August, 1880, he was at Ottumwa, on his way to Texas. While waiting at the depot for passage by railroad, the man Davis, who is indicted jointly with the defendant, approached him and entered into conversation with him, with the evident purpose of making his acquaintance and gaining his confidence, saying among other things that he was going upon the same train, and suggested that they travel together. Afterwards Davis went away, but he returned before train time. What he went for is only a matter of conjecture. Before the train was ready to start he suggested to Frizzell that they go aboard and get a seat before the cars became crowded. Soon after they had taken their seats the defendant came to Davis and sat down near him. Davis introduced Frizzell to him, and defendant asked Davis if Frizzel was a friend of his, and Davis replied that he was. The defendant then asked Davis to pay the freight on his goods which were to be shipped with him. Thereupon Davis took out of his pocket-book a check upon the bank of Booneville, and offered the same to the defendant, which the defendant declined to take. Booneville, it appears, was upon the road and Frizzell was going there. When the defendant refused to take the check, Davis applied to Frizzell to aid him by advancing him money, promising to repay him when they reached Booneville. Frizzell advanced the money, which Davis delivered to the defendant. Davis then demanded of the defendant a receipt. The defendant had no receipt to give him, and so he asked him to step out with him and get a receipt, and suggested that in the mean time Frizzell should keep his seat for him. Frizzell kept Davis' seat for him but he did not return. The train having started without Davis, Frizzell reported the matter to the conductor, who stopped the train and let Frizzell off, and Frizzell went back to Ottumwa. Davis had no goods to pay freight on, nor in the hands of the company.

The first evidence objected to by the defendant is the tes-

timony of Frizzell as to what Davis said when they first met at the depot, where Davis sought Frizzell's acquaintance, representing that he was going upon the same train, and had some goods which he was shipping, and suggesting that they travel together.

2. —: ——: evidence.

. .The objection urged is that the defendant was not present, and Frizzell had not seen him at that time, and that it is not shown that Davis and the defendant were at that time acting in concert.

To this we think it sufficient to say that there. is good ground for believing that the first interview at the depot was a part of the scheme whereby Frizzell was decoyed into parting with his money, which passed into the defendant's hands through a supposed loan to Davis. It cannot be doubted that the defendant came aboard of the cars through a previous arrangement with Davis, consummated at the time Davis absented himself from Frizzell after having made his acquaintance at the depot. The defendant undoubtedly came to garner the fruits of that acquaintance, and we think that there was no error in allowing evidence of what was said by which the acquaintance was made, and the confidence of Frizzell was gained.

The court gave an instruction in these words: "Money obtained of another under a promise to repay it, without other representation, although the party obtaining the money has no intention to repay it, it is not such false pretense or representation as to constitute a crime. But the promise to repay the money coupled with false representations as to property, made with intent to defraud, and which is relied upon, is such false pretense."

3. —: ——: what constitute.

The defendant objects to this instruction and insists that a false promise can in no event be a false pretense. .

Doubtless the crime in question is not committed without a false statement in regard to an existing fact. But the false statement may become effective and criminal only by

being coupled with a false promise; and where that is so we have no doubt that the false statement and the false promise may be considered together as constituting the false pretense. That appears to us to be the doctrine of the instruction, and we think it correct.

The court gave an instruction in these words: "If you find from the evidence that the alleged false pretenses named in the indictment are substantially proven as laid, then you should find the defendant guilty."

The defendant objects to this instruction. He insists that, taken together with the other above set out, it was calculated to mislead the jury, and cause them to believe that if they found the false promise proven, they would be justified in finding the defendant guilty.

But the court expressly told the jury that a false promise alone would not constitute the crime. We do not see how the court could have said more upon that point.

The court gave an instruction in these words: "If you find from the evidence that the defendant and Davis, acting in concert, designedly made the representations substantially as set out in the indictment; that such representations were false and untrue; that they were made with the intent to defraud Frizzell, and that by said false representations he obtained from said Frizzell the sum of eighteen dollars, and that said false representations were made in Wapello county, Iowa, and you further find that all said matters have been established by the evidence beyond a reasonable doubt, then you should convict the defendant; but if you are not so satisfied beyond a reasonable doubt, then you should acquit the defendant."

The defendant objects to this instruction. He insists that it proceeds upon the theory that the jury should convict, if the false pretenses were proven, however frivolous they may be.

We can conceive that alleged false pretenses might be so frivolous as to preclude the supposition that any person could

be misled by them and induced thereby to part with his money. But this is certainly not such a case. The court was fully justified in submitting the question as to whether the defendant obtained Frizzell's money by the false representations. It is true that these representations were not such as would probably have induced a shrewd and experienced man to part with his money. The criminal classes, it may be presumed, do not usually approach such men with such methods. But they were well calculated, we think, to mislead and defraud some men. At all events it was a fair question for the jury as to whether they believed that Frizzell was defrauded by them, and this question was fairly submitted. If Frizzell was defrauded by the false pretenses, they are not to be regarded as frivolous as to him. We see no error in the instruction.

The court instructed the jury that in determining whether the pretenses were frivolous, they should "look at the age of Frizzell, his experience and general knowledge, his health, and all the evidence bearing upon that subject."

The defendant objects to this instruction. He insists that the instruction means that if Frizzell was a child, or imbecile by reason of bad health, any representation would be sufficient to justify a verdict of guilty.

But the defendant's interpretation of the instruction is a clear perversion of it. The jury was entitled to consider Frizzell's age, etc., in determining whether he was actually misled and defrauded. If he was thus defrauded the jury would not have been justified in regarding the false pretenses as frivolous, and acquitting upon that ground. We ought certainly to adopt no rule which should make the young, the inexperienced, and the half-witted, the legitimate prey of criminals.

The defendant complains that the instructions given ignore the idea that Frizzell was bound to make any effort to learn the truth of the statement made to him. In support of his

position that such idea should not have been ignored, he cites *State v. Young*, 76 N. C., 258. In that case the court said: "A false statement that a house and lot are unincumbered, when in fact they were subject to a recorded mortgage, is not a false pretense within the meaning of the statute, because the party defrauded had the means of detection at hand, and might have protected himself in the exercise of common prudence."

But that case bears very little resemblance to the case at bar. In that case there was an actual borrowing of money, and a *bona fide* intent, doubtless, to repay. The false representation went merely to the condition and value of the security. In the case at bar the jury was justified in believing that the borrowing was a mere pretense.

The defendant insists that the verdict should have been set aside as against the evidence, because Frizzell testified that he did not rely upon the property.

It is a matter of course that he did not rely upon the property as security. He parted with his money under the supposition that he was assisting a fellow-traveler in an emergency. The emergency had no existence, and Davis was not a fellow-traveler, and the defendant knew it. The verdict, in our opinion, was abundantly sustained by the evidence. We see no error, and the judgment must be

AFFIRMED.