State of Iowa, appellee, v. Bernard J. Comes, appellant.

No. 48291.

(Reported in 62 N.W.2d 753)

FEBRUARY 9, 1954.

Arthur N. Neu, of Carroll, and Page & Nash, of Denison, for appellant.

Leo A. Hoegh, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Ralph M. Crane, County Attorney of Carroll County, for appellee.

SMITH, J.—The indictment in effect accused defendant of having ("on or about July 18, 1950") obtained from one Joe Wernimont, by false pretenses, a check for $1300, bearing the signature of W. S. Robinson, payable to and the property of said Wernimont.

The claimed false pretenses related to the organization of a burial benefit society called Pilgrim Fathers Benefit Association. Wernimont testified that defendant and one Joe Zitzlsperger first talked with him the "latter part of May or the first part of June, 1950." He said they told him "they had the Pilgrim Fathers incorporated and that there was money to be made out of this corporation and wondered whether I would be interested in buying in with them. They had an offer of $15,000, they considered it was worth a lot more * * * over a period, and that they had time to go and solicit memberships * * * but they hadn't finances enough to do so. If I was to buy a third interest * * * it would give them sufficient money to go ahead and organize * * * by putting a branch office in several different towns and have memberships there." He also testified

they told him defendant was the president and Zitzlsperger secretary-treasurer. There were numerous talks, according to his testimony, but this briefly summarizes the claimed false pretenses.

It appears that defendant, having learned an organization called the Colonial Benefit Association, Council Bluffs, Iowa, "had closed its books", was prompted to organize a similar burial benefit society which he called "Pilgrim Fathers Benefit Association." He had Articles of Incorporation drawn by Attorney Thomas O. Tacy, of Council Bluffs, and from him he also procured a copyrighted lodge ritual of the defunct Association. The Articles were executed (May 18, 1950) by defendant-Comes, Zitzlsperger and defendant's son, L. H. Comes, before Arthur N. Neu, notary public, Carroll, Iowa, but they were not recorded.

Defendant testified: "The reason for procuring the right to use the ritual was that it pertains to the lodge which was connected with the Pilgrim Fathers Benefit Association which was to be partly in the nature of a fraternal organization and it would 'give a representative form of government, ritualistic work and a lodge system.'"

Both defendant and Wernimont live in Carroll, Iowa, but defendant said his place of business as a "mineral-insecticide salesman" was in Council Bluffs. Zitzlsperger lives in Denison. According to Wernimont's testimony he had known both defendant and Zitzlsperger since about May 1950. He employed them indirectly through Attorney Tacy "to do some investigation work for me." He said they went to Waterloo and later to Dubuque and Sioux City. "We worked together, the three of us."

He also testified, "Mr. Comes and I went to Fonda, Iowa, on business pertaining to organizing a company to manufacture hammocks." His testimony reveals the "investigation" trips to Waterloo, Dubuque and Sioux City were "to find records" pertaining to an indictment against him in Federal court to which he later entered a plea of nolo contendere. It also appears Wernimont owned and was interested in renting a building in Carroll, space in which was then rented to the Moose Lodge under a lease about to expire. He testified, "I finally agreed on a lease with Mr. Comes * * *."

Wernimont says that relying on the representations he bought a one-third interest in the Pilgrim Fathers venture for $5000 upon which he made a down payment of $1300, borrowed by him upon his life insurance. The payment was represented by a check of W. S. Robinson payable to Wernimont and by him endorsed and delivered to defendant. It was later cashed. Zitzlsperger testified "I took the money along home to Denison and put it in a safe-deposit box in the First National Bank at Denison and it is still there. * * * I made no claim that the money belongs to me. It belongs to the association, if we get started."

Other details may be referred to as we proceed. The jury found defendant guilty and he appeals from the resulting judgment.

I. The false pretenses relied on by the State are two: (1) The representation that the Pilgrim Fathers Benefit Association was incorporated; and (2) that the business thereof would be profitable. Defendant contends neither constitutes a representation as to a material existing fact.

The law relating to this crime and the nature of the "false pretenses" sufficient to convict is quite well settled. The pretense must be not only false but also a representation as to a material existing fact or past event. 35 C. J. S., False Pretenses, section 8; 22 Am. Jur., False Pretenses, section 12; State v. Hollingsworth, 132 Iowa 471, 109 N.W. 1003. It must be "of a past event or existing fact * * * calculated to deceive." State v. Carter, 112 Iowa 15, 20, 83 N.W. 715, 716; 22 Am. Jur., False Pretenses, section 2, note 7, citing State v. Foxton, 166 Iowa 181, 189, 147 N.W. 347, 52 L. R. A., N. S., 919, Ann. Cas. 1916E 727; 35 C. J. S., False Pretenses, sections 1, 6, 15.

We have definitely repudiated the old doctrine that the pretenses must be such as to deceive a "prudent and intelligent man", saying "the law will afford protection to the dull, stupid, confiding, and imbecile against the acts of a cheat." State v. Fooks, 65 Iowa 196, 198, 21 N.W. 561, 562.

But there is no claim made here by the State, and could not be made under the evidence, that Wernimont was not a person of ordinary or average intelligence. Nor is there anything in the record to suggest that mere filing of the articles was

considered by any of the parties as anything but a routine detail. Wernimont admitted on cross-examination that Comes and Zitzlsperger did not actually tell him the Articles were filed. Of course that is technically implied in the representation that the organization was incorporated.

It is clear the statement that the Pilgrim Fathers was incorporated was technically a misstatement concerning a present, existing condition. The representation that its business would be profitable was just as clearly a mere expression of an opinion concerning the future—a hope or expectation—not a fact.

Can either, or can the two taken together, constitute a statement of a material past event or existing fact, *"calculated* to deceive" and sufficient to sustain the verdict of guilty?

In the Hollingsworth case, supra, 132 Iowa at page 473, 109 N.W. at page 1004, we said: "Yet a promise to do something in the future may be so connected with a statement as to an existing fact as that the statement of fact only becomes effective because of the promise, and in such cases the two may be considered together in determining the character [nature] of the pretense." In a similar manner, may we hold here that the two alleged misrepresentations so supplement each other as to create a misrepresentation of existing fact, calculated to result in fraud under our false pretense statute?

We hardly think so. Wernimont's testimony makes clear he understood the organization was only in the promotion stage. Other than these two representations his whole account of his conversations with defendant and Zitzlsperger pertains to what they told him of their plan of future procedure: The organization was to operate "similar" to the Moose and Elks Lodges, there would be a death-benefit provision that when one of the members would die all would be assessed a dollar each; they planned to have self-supporting club rooms in every town where they organized, with initiation dues, etc. None of these is shown to have been false.

Wernimont understood the situation. He knew the organization was not yet working. He claims he never saw or even asked to see the Articles of Incorporation. He neither received nor demanded a stock certificate to represent an interest in a business corporation. There was no representation that the "cor-

poration" had any physical assets. No investment had been made on its account except an attorney fee for drawing the Articles, and paying for use of the copyrighted ritual, a small rent payment and some printing of forms. The expectation of future profit was under the record the persuading fact so far as Wernimont was concerned. Whether the Articles of Incorporation were presently recorded or merely drawn and ready to record had no relation to the hope or promise or prediction of future profit.

II. The State argues that defendant represented the "Pilgrim Fathers" was "incorporated for profit." If by this is meant there was a representation that it was a corporation "for pecuniary profit" under chapter 491 (Iowa Code, 1950) we find in the evidence no factual basis for the argument.

While it was represented "there was money to be made", the proposed operation of the association was fully disclosed, according to the witness's own testimony. The representations made to him by defendant were substantially in accord with the provisions of the Articles of Incorporation already drawn and executed. There was no misrepresentation of fact except the statement that the association was "incorporated."

█ Whether the proposed corporation would be technically one for profit, or a nonprofit corporation, under Code chapter 504, was a matter of legal opinion and could not be the subject of false pretense so long as the facts themselves were not misrepresented. Long ago this court said: "The authorities are agreed that upon mere matters of opinion, an indictment for false pretenses cannot be predicated." State v. Webb, 26 Iowa 262, 264. Without doubt that is still the law.

And there is no testimony here defendant even expressed an opinion as to the kind of corporation he was organizing.

III. We find no evidence of any specific criminal intent by defendant to deceive Wernimont, and no actual deception, as to the nature of the proposed plan of operation of the organization. If the scheme itself was on its face of doubtful soundness from the standpoint of either honesty or practicality, there was manifested no intent to deceive Wernimont in that respect. The mere fact the Articles of Incorporation were not yet filed

had no relation to such circumstances. By his own testimony he was told the nature of the adventure and was willing to join in it.

The specific intent to deceive is, of course, an essential element of the crime. State v. Detloff, 201 Iowa 159, 167, 205 N.W. 534; 35 C. J. S., False Pretenses, section 50, page 705; State v. Chambers, 179 Iowa 436, 446, 161 N.W. 470. The statute itself provides: "If any person *designedly* and by false pretense * * * obtain from another any * * * property * * * he shall be imprisoned * * *." (Emphasis supplied.) Code section 713.1. Proof of general malice or general criminal intent is not sufficient. State v. Huckins, 212 Iowa 283, 292, 234 N.W. 554.

Such intent may be proven by circumstantial evidence. But we find no circumstances here bearing on any such intent. Certainly an untrue representation made after Articles were drawn and executed but before they were actually filed constitutes no evidence that it was made "designedly" or with any specific intent to deceive Wernimont.

IV. There are other matters complained of by defendant that merit comment. It is of course the duty of a prosecuting officer to present the State's cause zealously and effectively within proper bounds. But he should not attempt to bring to the attention of the jurors matters not proper for their consideration. He should not impose upon the trial court the delicate duty of so ruling on improper questions to witnesses, and of so admonishing the jury to disregard them, as to avoid reversible error. The county attorney is an officer of the court, and under the same obligation of dispensing fairness and justice as is the judge.

It was said in State v. Ean, 90 Iowa 534, 537, 58 N.W. 898, 899, concerning a situation in which the attorney overstepped proper bounds: "If there were any reasonable doubt in our minds as to defendant's guilt, we should promptly reverse this case for these attempts to inject into the case matters which the county attorney must have known were improper."

In State v. Roscum, 119 Iowa 330, 332, 333, 93 N.W. 295, 296, the case was reversed and after commenting "it is scarcely conceivable that it could have been offered by any lawyer in

the belief that it was admissible", the opinion states: "The proof of guilt in the present instance is by no means so clear and indisputable as to convince us that appellant was not prejudiced by this conduct on part of the prosecutor."

Even stronger condemnatory language is found in the opinion in State v. Poston, 199 Iowa 1073, 1075, 203 N.W. 257, 258: "We are unable to understand why prosecuting attorneys persist in thus infracting the well established rules of practice. * * * However, we presume that the field is so attractive that they cannot refrain from browsing therein * * *." Many other cases might be cited but the foregoing are sufficient.

The prosecution here, on cross-examination of defendant, went quite out of beaten paths to discredit him on immaterial matters: "Q. Isn't it true that in *1939* you were requested by the police department (of Council Bluffs) for your address, and you gave your address as 2403 Avenue A?" And a few questions further: "Q. You think you did not give the police department that address?"

Concerning the identification of Zitzlsperger at the Lytton bank by defendant so the former could cash the $1300 check, defendant was asked on cross-examination whom he knew at the bank and he replied: "Well, I cashed different checks at many banks, also at Lytton." The prosecutor prefaced his next question by the gratuitous and utterly improper comment: "That has been a history about your checks."

He was asked if he had not approached a certain clergyman to offer Wernimont $1300 to dismiss this charge and whether he had not been advised that Wernimont offered to talk to the county attorney if he would give the money to the parish. He denied having done so. (No subsequent offer of impeachment evidence was made.) He was then asked: "Answer this yes or no, Mr. Comes. Do you know that to offer a man money to influence the dismissal of a criminal proceeding is compounding a felony?"

The court sustained prompt objection to this last question but the point doubtless reached the jury.

He was asked if he had not gone to Mrs. Wernimont and offered to give her the money. He answered "No" and there

was no subsequent attempt to contradict or impeach him upon the foundation thus laid.

A hotel manager and deputy sheriff were brought from Council Bluffs to contradict and impeach defendant upon the irrelevant matter of his not having registered at a hotel there during May or June 1950. The deputy sheriff was asked if he had a record of defendant in his office and having replied in the affirmative was asked: "Do you have a picture of the gentleman?" The court sustained objection but again the improper interrogation was heard by the jury and the effect of its implication was secured.

Defendant testified on cross-examination as to the present and former trade names under which he operated his mineral-insecticide business. The county recorder was brought from Council Bluffs to testify that only the former was registered in that county. What relevancy had this to the charge here?

It would require a more extensive setting out of the record than is practicable here to convey a complete understanding of the vice of the various matters complained of under this classification. The court in some instances sustained objections and in others overruled. Possibly no one of them would, standing alone, justify a reversal.

We have examined the record "without regard to technical errors", as we are required by statute to do, to determine if the trial was fair. Were the case not to be reversed on another ground we would still be unable to say that appellant was not prejudiced by improper matter brought into or attempted to be brought into the case.

Defendant may be an unworthy person in other ways than were charged in this indictment. He may for some reason have been under police surveillance in 1939. He may have had check troubles at some stage of his career. He may have been conducting a business under a trade name not properly registered or have answered inaccurately as to his having been registered at a hotel or having lived at a certain address at a given time.

But these matters had no place in this case. He was not on trial for them. They could serve only to prejudice the jury.

Other contentions urged need not be adjudicated or discussed. The matters already pointed out require a reversal and it is so ordered.—Reversed.

BLISS, C. J., and GARFIELD, WENNERSTRUM, MULRONEY, HAYS, THOMPSON, and LARSON, JJ., concur.