PIONEER VALLEY SAVINGS BANK, a
Corporation, Plaintiff,

v.

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA, a Corporation, Defendant.

Civ. No. 1275.

United States District Court
N. D. Iowa, W. D.

Jan. 21, 1964.

See publication Words and Phrases for other judicial constructions and definitions.

---

Kenneth T. Wilson, Charles F. Stilwill, Sioux City, Iowa, for plaintiff.

Wiley E. Mayne, Sioux City, Iowa, for defendant.

HANSON, District Judge.

This is an action arising out of a dispute between the Pioneer Valley Savings Bank and its blanket bond insurer, Indemnity Insurance Company of North America.

On or about May 21, 1960, the defendant, Indemnity Insurance Company of North America, executed and delivered to the plaintiff the Bankers' Blanket Bond, Form No. 24, bond No. S226298, wherein the defendant agreed to indemnify and hold harmless the plaintiff to an amount not exceeding $75,000.00 from and against such losses as are set out in the bond and subject to such limitations as are set out in the bond.

The pertinent coverages and limitations in the bond are:

"The losses covered by this bond are as follows: * * * (B) Any loss of Property through * * * common-law or statutory larceny, theft, false pretenses * * *"

"This bond does not cover: * * * (d) Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses * * *"

The plaintiff alleges that on or about October 13, 1960, the plaintiff sustained a loss of property in the amount of $35,000.00 through false pretense or, alternatively, that this loss was sustained by reason of common-law or statutory larceny. The plaintiff claims the loss was covered by the bond and that plaintiff is entitled to recover $35,000.00 plus interest and costs.

The defendant claims that the loss was sustained by reason of a loan, that is, that the transaction wherein the $35,000.00 was lost constituted a loan. The defendant also claims that the transaction wherein the loss was sustained did not constitute false pretenses or common-law or statutory larceny. The plaintiff also alleged a check kiting scheme as bearing upon the transaction.

The essential and relatively undisputed facts are that Paul Dick came to the plaintiff Bank and there met Mr. Wies, President of the plaintiff Bank. Paul Dick gave the plaintiff Bank two checks each in the amount of $17,500.00 and each was drawn on the Early Savings Bank, Early, Iowa. In exchange for these two checks, the plaintiff Bank gave Paul Dick a draft payable to the Citizen's Savings Bank of Sac City, Iowa. This draft was drawn on the Live Stock National Bank of Sioux City, Iowa, the correspondent bank of the plaintiff Bank.

At a time shortly prior to the above transaction, Paul Dick had gone to the Arthur Trust and Savings Bank of Arthur, Iowa, and presented two checks each in the amount of $17,500.00 drawn on the Sac City Bank. A draft was given by the Arthur Bank in exchange which was drawn on the Iowa Des Moines National Bank. The two checks drawn on the Sac City Bank were not good in that there were insufficient funds in the drawer's account to pay the same. The draft received from the plaintiff Bank was used to increase the deposit in the Sac City Bank and the checks presented to the Arthur Bank drawn on the Sac City Bank then became good because there were then sufficient funds in the Sac City Bank to cover the checks. The two checks drawn on the Sac City Bank were then honored. The two checks drawn on the Early Bank and given to the plaintiff Bank were never honored.

The check for $35,000.00 which Paul Dick received from the Arthur Bank was

deposited in the Early Bank to the account of Early Iron and Metal, Paul Dick.owner, and with those funds a draft of the Early Bank was purchased in the amount of $33,610.70 payable to the Sac City Bank to cover $33,610.70 worth of bad checks which had been deposited there in the Marie Longman account. Paul Dick had deposited these checks, himself as drawer, in the account of Marie Longman and then two checks were written, one for $13,450.00 and one for $20,180.00 on this account. These were paid on the belief that the checks Paul Dick had deposited in this account were good. The two checks used to obtain the $35,000.00 from the Arthur Bank were drawn on the Sac City Bank. It was the $35,000.00 obtained from the plaintiff Bank which was paid to the Sac City Bank which made these two checks good. The two checks used to get the money from the plaintiff Bank were drawn on the Early Bank and were never paid because the series of frauds were finally discovered. Plaintiff Bank was out its $35,000.00. During this time there was only $6.97 in the account of Paul Dick in the Early Bank and there was only $2,492.77 in the account of Marie Longman.

The defendant argues that there was no evidence amounting to a representation of an existing fact or past event, and that there was only a promise to do something in the future. The evidence shows that in obtaining the draft from the plaintiff, Paul Dick did make a number of representations to Adam Wies. Among such evidence is the testimony that Paul Dick had sufficient checks to deposit which would cover the checks given to the plaintiff Bank and drawn on the Early Bank. Paul Dick stated that he was on his way to Omaha and that he needed the checks for his scrap business. He led the plaintiff to believe that he was still Vice-President of the Early Bank. Mr. Wies had known Paul Dick as a bank examiner. Paul Dick told Adam Wies that the two checks would be good when presented to the Early Bank for payment.

## FINDINGS OF FACT.

1. Paul Dick represented that he had checks in his portfolio that would cover the checks given to the plaintiff Bank and this representation was false and was relied upon by Adam Wies and the plaintiff Bank.

2. Paul Dick misrepresented his position and credit with the Early Bank and his position and credit with the Early Bank were relied upon by Adam Wies and the plaintiff Bank.

3. Paul Dick intended to defraud Adam Wies and the plaintiff Bank.

4. The checks given by Paul Dick to the plaintiff Bank when presented in the usual course of business were refused by the Bank upon which they were drawn.

5. Paul Dick delivered to the plaintiff Bank two checks and secured another check drawn on the plaintiff Bank and knowingly did not have an arrangement or understanding or funds in the Early Bank sufficient to meet or pay the check.

6. Paul Dick perpetrated a check kiting scheme.

7. Plaintiff Bank never intended to make a loan to Paul Dick.

8. The transaction between the plaintiff Bank and Paul Dick would not be considered a loan transaction as that terminology is known to the experts in the banking business.

## CONCLUSIONS OF LAW.

In Iowa the crime of false pretense may be predicated under either Section 713.1 or Section 713.3 of the Iowa Code, I.C.A. These two sections read as follows:

"713.1 False pretenses. If any person designedly and by false pretense, or by any privy or false token, and with intent to defraud, obtain from another any money, goods, or other property, or so obtain the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be imprisoned in the penitentiary not more than seven years, or

be fined not exceeding five hundred dollars, or be imprisoned in the county jail not exceeding one year, or be punished by both such fine and imprisonment."

"713.3   False drawing or uttering of checks. Any person who with fraudulent intent shall make, utter, draw, deliver, or give any check, draft, or written order upon any bank, person, or corporation and who secures money, credit, or thing of value therefor, and who knowingly shall not have an arrangement, understanding, or funds with such bank, person, or corporation sufficient to meet or pay the same, shall be guilty of a felony, if such check, draft, or written order shall be for the sum of twenty dollars or more, and shall on conviction thereof be punished as in section 713.1   *   *   *."

■   The requirements under Section 713.1 as applied to the facts of this case are clear. There is a split of authority on the question of whether the criminal offense of false pretenses may be based solely upon the present intention of the defendant not to comply with his promises or statements as to his future acts. The cases are annotated in 168 A.L.R. 833. The Iowa rule is that the offense may not be so predicated. However, 168 A.L.R., p. 840, states:

"The rule that the crime of false pretense is not predicable upon the present intention of the defendant not to comply with a promise or statement as to his future acts is to be distinguished from the rule applicable to a false representation or statement regarding a past or existing fact, accompanied by a promise or statement as to a future act. The fact that a present intention of a person not to comply with his promises or statements as to a future act accompanied a false statement as to a past or existing fact does not render the latter statement ineffective to show his commission of the crime of obtaining property under false pretenses."

That statement is nearly the unanimous rule. It is certainly the Iowa rule. State v. Hollingsworth, 132 Iowa 471, 109 N.W. 1003; State v. Comes, 245 Iowa 485, 62 N.W.2d 753; State v. Tripp, 113 Iowa 698, 84 N.W. 546; State v. Montgomery, 56 Iowa 195, 9 N.W. 120; State v. Dowe, 27 Iowa 273; State v. Fooks, 65 Iowa 196, 452, 21 N.W. 561, 773.

■   In the present case, Paul Dick misrepresented his present ability to have the checks given to the plaintiff Bank paid when presented to the Early Bank when he stated that he had ample checks in his portfolio to cover the checks he gave to the plaintiff Bank. This misrepresentation was sufficient to cause the plaintiff Bank to rely upon. All the requirements of Section 713.1 have been met in this case.

The courts have drawn a distinction between the type of offense found in Sections 713.1 and 713.3. In Murphy v. Hollowell, 204 Iowa 64, 214 N.W. 734, the court said if the only false pretense alleged that he had represented that he had funds on deposit in the bank to meet the check, the offense charged would be that defined by Section 13047. (This statute is now Section 713.3). However, the court held that if there were additional false representations, the crime is false pretense under Section 13045 (now 713.1). 24 A.L.R. 397 and 52 A.L.R. 1167 annotate numerous cases which hold that misrepresentations as to ability may form the basis for the criminal offense of false pretense. In Clifford v. State, 56 Ind. 245, for example, the court said false representations in regard to the pretender's responsibility and solvency is within the statute punishing persons for obtaining money by false pretenses.

■   In a prosecution for obtaining property by false pretenses, reliance solely on the pretended fact by the owner is unnecessary, and it is sufficient if the pretended fact is a part of the moving cause and without it the owner would not have parted with his property. State v. Lien, 72 S.D. 4, 30 N.W.2d 12; Brennan v. State, 141 Neb. 205, 3 N.W.2d 217; State

v. Fooks, 65 Iowa 196, 452, 21 N.W. 561, 773; State v. Carter, 112 Iowa 15, 83 N. W. 715. The defendant contended that there were no misrepresentations of material facts which were relied on and that there was only a breach of promise. Clearly, Mr. Wies believed all the false representations made to him by Paul Dick on that day.

■ The elements of the crime in Section 713.3 are clear, but the defendant does not believe that Section 713.3 charges a false pretense as that phrase is used in the blanket bond in question. It is true that Section 713.3 is not titled a false pretense. The rule as to interpretation is found in Home Federal Savings & Loan Association v. Peerless Insurance Co., D.C., 197 Fed.Supp. 428, 437. Hartford Acc. & Indem. Co. v. Federal Deposit Ins. Corp., 204 F.2d 933 (8th Cir.); National Bank of Paulding v. Fidelity & Casualty Co., D.C., 131 Fed. Supp. 121. Where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Decisions like Cedar Rapids Nat. Bank v. American Surety Co. of New York, 197 Iowa 878, 195 N.W. 253 show that this is exactly the type of protection which the banks would seem to want. See also Hartford Acc. & Indem. Co. v. Federal Deposit Ins. Corp., supra.

Courts have used the phrase false pretense in referring to this type of transaction. In State v. Augustine, 114 W.Va. 143, 171 S.E. 111, the court said giving of a worthless check is, in itself, a false pretense, giving of the check being a representation that the drawer has sufficient money with the drawee. In State ex rel. Hastings v. Bailey, 263 Minn. 261, 116 N.W.2d 548, the court said that the type of offense is analogous to the crime of false pretenses. That court also stated that the gist of the offense defined by this type of statute is the obtaining, with intent to defraud, the money or property of another by false pretenses; that is, by color or aid of a check or draft which the accused has no reason to believe will be paid.

There is uncertainty as to whether local criminal statutes are controlling in determining the meaning of such terms as false pretenses in bonds. See Judge Graven's discussion on this in Home Federal Savings & Loan Association v. Peerless Ins. Co., supra. In Fidelity & Casualty Co. v. Bank of Altenburg, 216 F.2d 294 (8th Cir.), p. 303, the court strongly indicated that it believed that false pretense in the bond meant false pretense under either the ordinary meaning of the term or under the local criminal statutory definition.

In Kropp Forge Co. v. Employers' Liability Assur. Corp., 159 F.2d 536, 537 (7th Cir.), the court held the bond intended to avoid the technical definition of forgery and to cover a wider meaning than the criminal law definition. In First National Bank of Lancaster v. Glen Falls Ins. Co., Tex.Civ.App., 329 S.W.2d 115, the court held the same way.

The Iowa statute Section 713.3 states that if the check be for the sum of twenty dollars or more, the punishment shall be as in Section 713.1. This tends to show that the Iowa Legislature believes that this is the same as a false pretense violation under Section 713.1. The elements of the two crimes are quite similar except that under Section 713.3 certain facts are implied by the giving of the bad check and its not being paid when presented.

In Fidelity and Casualty Co. v. Bank of Altenburg, supra, the court seemed bothered by the fact that the Missouri bad check statute was not labeled false pretense. The court did not say that this statute did not define a type of false pretense. The Missouri statute made the crime a misdemeanor. In Iowa it is a felony and punished as a false pretense. This distinguishes it from the Missouri statute.

■ The court concludes that even though Section 713.3 is not entitled false pretense, it is considered a crime of false pretense and comes within the definition of that term in the Blanket Bond.

In State v. Lansman, 245 Iowa 102, 60 N.W.2d 815, the Iowa court set out the elements of the offense under Section 713.3. The court stated:

"The essential elements of the crime are these: 1. Intent to defraud; 2, securing money, credit or other thing of value by means of a check, draft or written order; and 3, knowingly not having any arrangement, understanding, or funds with the bank, person or corporation upon which the check or other instrument is drawn sufficient to meet or pay the same."

\* \* \* \* \* \*

"It will be noted here the state offered no evidence from the drawee bank as to the insufficiency of the funds, or lack of arrangement or understanding. It is aided, however, by section 713.4 which says a showing the check was refused by the drawee shall be material and competent evidence of such lack of arrangement or funds. When the state showed the check had been returned unpaid it had made a prima facie case on which it was entitled to have the jury's verdict."

\* \* \* \* \* \*

"Section 713.4, until the evidence which it makes available to the state is conclusively rebutted, also makes proper an inference of fraudulent intent."

\* \* \* \* \* \*

"But if the showing, whether it be labeled a presumption or an inference of fact, provided for the state by section 713.4 is conclusively rebutted, either by the state's own case or by the defendant, the evidence of fraudulent intent falls and there is nothing to submit to the jury."

\* \* \* \* \* \*

"In other words, the fact the funds or credit are not available for payment when the instrument is presented brings the presumption or inference of fact into play."

Other Iowa cases have said that the presenting of the check carries with it the representation that there are funds or credit with the drawee Bank to cover the check. State v. Doudna, 226 Iowa 351, 284 N.W. 113 (1939). Clearly, Mr. Wies believed that there was at least credit with the Early Bank sufficient to cover the check. In State ex rel. Hastings v. Bailey, supra, the Minnesota court said:

"In negotiating a check the maker does not necessarily represent that he then has with the bank funds out of which it will be paid, but he does represent by the act of passing the check that it is a good and valid order for its amount, and that the existing state of facts is such that in the ordinary course of business it will be met; or, in other words, he impliedly represents that he has authority to draw the check, and that it will be paid on presentation. Such authority need not be expressed, but it may be inferred from the course of dealing between drawer and drawee."

■ The strongest case that can be made for the defendant is that Paul Dick told Adam Wies that he had checks sufficient to cover those two checks given to the plaintiff Bank and that because of this, Mr. Wies should have known that Paul Dick did not then have sufficient funds in the Early Bank at the time the delivery of the two checks to the plaintiff Bank was made. The evidence does not establish this because Mr. Wies testified that he was never told that there were not sufficient funds in the Early Bank to cover the checks when they were delivered to the plaintiff Bank, but even if it does, it is not sufficient to warrant a finding that Section 713.3 was not violated. Mr. Wies was also relying upon the credit of Paul Dick, and the Iowa decisions clearly state that giving a check carries with it a representation that there are either funds or credit with the drawee bank to pay the same.

**410**

It has already been pointed out that false pretense as used in the bond has a broader meaning than the criminal law definition, and although the court feels that this transaction would be covered by either Section 713.1 or 713.3, it would not necessarily have to meet every element of these statutes with the same strictness as would a criminal prosecution. Also, the burden of proof is different in a civil case. The elements in this case need only be established by a preponderance of the evidence. The court concludes that there was sufficient evidence to find that there was a false pretense under either Section 713.1 or 713.3 of the Iowa Code, I.C.A.

In Fidelity and Casualty Co. v. Bank of Altenburg, supra, and Hartford Acc. & Indem. Co. v. Federal Deposit Ins. Corp., supra, the court sustained the proposition that check kiting is a false pretense as that term is used in the Banker's Blanket Bond. In Fidelity and Casualty Co. v. Bank of Altenburg, supra, the court said:

"Check kiting, as practiced here, involves more than the mere use of a check with insufficient funds in the bank to meet it. It involves a series of acts which together constitute a scheme, a studied device, false pretenses built upon a series of false representations designed to lull the banks involved into a feeling of confidence and security. The bad check is given. Money or credit is received from a bank other than the one on which the check is drawn. If credit is taken, that credit is usually drawn on immediately. The check kiter then deposits a check in the bank upon which the first check is drawn before the first check arrives there. The second check is drawn on the bank from which the first money or credit is received. Credit is taken for it and that credit covers the first check when it comes in and possibly additional credit. Then the process is carried on, back and forth, until the scheme is discovered."

Although Iowa does not have a check kiting statute as such, it does seem to this court that the Iowa court would hold it to be a common-law false pretense within the meaning of those terms in the Banker's Blanket Bond. These decisions of the Eighth Circuit Court of Appeals were based on Missouri law, but it would be common-law false pretense in Iowa as that term is used in the Banker's Blanket Bond.

The plaintiff Bank also alleged that there was a larceny committed. The bond uses the term common-law or statutory larceny. The transaction wouldn't come within the ordinary meaning of larceny because title passed. It would not come under the Iowa larceny by trick statute, Section 713.2, because Paul Dick was not falsely personating or representing another. Also in Cedar Rapids Nat. Bank v. American Surety Co. of New York, supra, the court held that if it was intended that the title should pass, there was no larceny by trick. The decision involved the interpretation of the word "larceny" in a Banker's Blanket Bond, and although the language of the bond is not the same, the court's interpretation of larceny there is conclusive on this court. The court concludes that the transaction was not larceny.

The defendant argues that the transaction between the plaintiff Bank and Paul Dick was a loan and came within the exclusory clauses. There are a few cases on this point but none of them are sufficiently on point to be of much help. A definition of a loan in a case somewhat similar to the present case is found in National Bank of Paulding v. Fidelity & Casualty Co., supra:

"A 'loan of money' is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equal to that borrowed. In order to constitute a loan, there must be a contract whereby in substance one party transfers to the other a sum of money which the other agrees to repay absolutely, together with such

additional sums as may be agreed on for its use, and if such be the intent of the parties the transaction will be a loan, regardless of its form."

The court further stated that there must be an agreement, either express or implied, whereby one person advances money to the other and the other person agrees to repay it upon such terms as to time and rate of interest or without interest as the parties may agree. In order to have such an agreement, the court said there had to be a meeting of minds. The court held there was no meeting of the minds as to agreement on a loan. Whether the parties made a loan is a question of their intention to be gathered from the facts. In re Grand Union Co., 2 Cir., 219 F. 353; United Tire & Investment Co. v. Trone, 189 Okl. 120, 113 P.2d 977. In many situations where a check is cashed at a Bank, the collecting Bank has paid out on the check several days before the Bank is able to get the check presented to the drawee bank. Several cases have determined that that type of situation is not a loan as that term is used in this case. Provident Trust Co. v. National Surety Corp., 138 F.2d 252 (3rd Cir.); Hartford Acc. & Indem. Co. v. Federal Deposit Ins. Corp., supra; Fidelity and Cas. Co. v. Bank of Altenburg, supra; National Bank of Paulding v. Fidelity & Cas. Co., supra.

In the present case, the plaintiff Bank intended no different type of arrangement. The plaintiff Bank was told that the check would be paid when presented in the normal course of business. Even if the plaintiff Bank did know that there were no funds in the drawee Bank to cover the checks when they received them, it was still only a check transaction especially when they were relying upon Paul Dick's credit at the drawee Bank. The elements of a loan are not present in this case. Both parties introduced expert testimony by bankers as to what constituted a loan as that term is used in the banking business. Certain of this testimony was based upon hypothetical questions and objected to as not correctly stating the record. The facts upon which the witnesses based their answers that the transaction was a loan were not accurate in that Mr. Wies did not know the checks were not good when given to him. This greatly reduces the value of the opinions wherein it was stated that the transaction could be called a loan. Some of the experts didn't think the transaction in the hypothetical question was a loan. Defendant's experts admitted they would not call this a normal loan. To the experts, this was a loan only in the sense that an involuntary loan might be made, or that it was a loan only in the sense that anyone who owes a bank must have borrowed from the bank. However, the courts have held that the mere duty to repay a bank for a bad check is not enough to say the bank made a loan. There was quite general agreement that bankers distinguish between an extension of credit and a loan. There was testimony that a loan is normally voluntary and that certain loan procedure would be gone through. The distinction they drew between a check transaction and a loan transaction is that in a check transaction the integrity of the maker is relied upon, and in a loan transaction, collateral security is taken. This seems to be a good basis for distinguishing between a bank loan and a check as both usually involve extending credit, and although interest is not strictly necessary, it would certainly be a rare situation where a bank did not require interest on a loan. One expert testified that he never knew of a bank loan where some type of interest was not required.

Whether or not a loan was made is principally a question of fact. The transaction in this case had almost all of the usual aspects of a normal check transaction. The only difference was the conversation between Adam Wies and Paul Dick, and this was not sufficient to cause Adam Wies to doubt that the checks were good when he received them. The transaction bears no similarity to the normal loan transaction. The court concludes that the plaintiff Bank did not intend to make a loan.

Under no reasonable definition of the word could this transaction be said to be a loan transaction. Henderson v. Farmers' Sav. Bank, 199 Iowa 496, 202 N.W. 259, is not similar factually to this case and is not authority for the transaction in the present case as a loan transaction. The same is true of Thompson v. Saint Nicholas Nat. Bank, 146 U.S. 240, 13 S. Ct. 66, 36 L.Ed. 956 and Sweet v. Security Sav. Bank of Perry, 200 Iowa 895, 205 N.W. 470. These cases along with In re Olson's Estate, 206 Iowa 706, 219 N.W. 401 show that whether a deposit in a bank is a loan to the bank is a factual matter of intent. The Saint Nicholas Nat. Bank case only shows that where the bank agrees to certify checks if sufficient collateral is pledged, this might be considered a loan by the bank. That was not what happened in the present case. Where a policy is susceptible to more than one construction, it will be construed most favorably to the insured. Rogers v. Maryland Casualty Co., 252 Iowa 1096, 109 N.W.2d 435. This rule is followed where there is an ambiguity or obscurity in the language. Mallinger v. State Farm Mutual Automobile Ins. Co., 253 Iowa 222, 111 N.W.2d 647. The defendant cited cases to the effect that the term "loan" should be interpreted according to the technical meaning that it has among bankers. Expert testimony was introduced by both parties on this point. The court concludes that this transaction was not a loan transaction as that word is used by experts in banking.

The defendant cites Langlas v. Iowa Life Ins. Co., 245 Iowa 713, 63 N.W.2d 885 and 9 Couch on Insurance 2d, Section 39.3 to the effect that the risk involved in this transaction was not that risk which was contemplated by the bond. It is correct that most loan transactions carry a greater risk than most check transactions. However, the transaction in this case was not a loan and thus the transaction is not a risk that was exempted from coverage under the loan exclusion clause.

Accordingly, this court concludes as a matter of law that the plaintiff shall have judgment against the defendant in the sum of $35,000.00 together with interest and costs, and, accordingly, a judgment will be entered.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.