STATE of Iowa, Appellant,

v.

Frank R. WEST and Robert E. Lee, Appellees.

No. 59959.

Supreme Court of Iowa.

April 20, 1977.

Richard C. Turner, Atty. Gen., John D. Hudson, Roxanne Barton Conlin, and Gary H. Swanson, Des Moines, Asst. Attys. Gen., for appellant.

Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., and Nelson, Vasey & Cahill, Nevada, for appellee West.

Lathrop & Albracht, Omaha, Neb., for appellee Lee.

REES, Justice.

In this case the State appeals the order of the trial court dismissing indictments against the defendants West and Lee who were respectively president-chairman of the board and group vice-president in charge of procurement of American Beef Packers (hereinafter ABP). The defendants were indicted by the grand jury of Pottawattamie County and charged with conspiracy in violation of § 719.1 and false pretenses in violation of § 713.1, The Code, 1975. The venue was subsequently changed to Story County. It is the State's contention that trial court erred in holding that the indictments and the bill of particulars filed pursuant to court order failed to allege facts constituting the elements of the crimes of false pretenses and conspiracy to commit false pretenses. We reverse and remand for further proceedings.

As stated above, the defendants were officers of American Beef Packers, Inc., which was engaged in the business of purchasing cattle for slaughter customarily but not exclusively on a "grade and yield" basis. Under the "grade and yield" basis the company acquired the cattle without paying the owners until the cattle had been slaughtered and the carcasses checked by employees of the United States Department of Agriculture, payment then being made based on the "grade and yield" of the carcasses. The indictments and bill of particulars can be reasonably interpreted to allege that during the time period December 24, 1974 through January 6, 1975, the company had become hopelessly insolvent, which resulted in the filing of a voluntary petition in bankruptcy on January 7, 1975. During this period of financial distress, the company continued the operation, ordering cattle for slaughter, which were purchased and delivered during all of said period and until January 6, 1975. A bank account maintained in a Seattle, Washington bank was customarily used to make payment for cattle purchases, but the State charges that during this time there were no funds in this account, and that the bank had been instructed to return the checks drawn on it and transfer any remaining funds to another bank. The State further charges the defendants used the funds left in the several accounts of American Beef Packers, Inc., to pay off a few selected creditors, and that any income generated from the cattle purchased during the period from December 24, 1974 through January 6, 1975 was channeled to such selected creditors, and the farmers who delivered cattle to ABP received no payment therefor during said period.

Following the filing of the petition for bankruptcy, the defendants West and Lee were indicted and charged with obtaining property under false pretenses and with conspiring to obtain property by false pretenses. Thirty separate indictments were filed, in which it was charged said crimes were committed upon 30 separate victims.

The indictments were subsequently amplified by the filing of a bill of particulars which was filed in response to the application of the defendants and the order of the court directing its filing. The indictment, the bill of particulars and a subsequent amendment to the bill of particulars disclosed the State's theory of the crimes charged; essentially that the defendants had obtained cattle from the sellers by representing either expressly or impliedly that ABP was in financial condition to pay for

the cattle and that the company intended to pay for the cattle, when in fact the defendants knew that the company was unable to pay therefor and did not intend to make payment for any cattle secured.

The defendants moved to set aside the indictments, contending that the facts alleged in them and in the bill of particulars as amended did not constitute the crime of obtaining money by false pretenses or the crime of conspiring to obtain money by false pretenses. The court sustained the motion and the indictments were set aside. The trial court held, in its order of dismissal, that one of the elements of the crime of false pretenses was a false representation regarding a material existing fact or a past event, and held that a promise to perform an act in the future, coupled with a present intent not to fulfill the promise, is not a misrepresentation of an existing fact or past event. The trial court further held that the mere nondisclosure of facts known to a defendant does not constitute a false representation of fact, and therefore does not meet the requirements for conviction of the crime of obtaining property by false pretenses.

The State contends the facts alleged in the indictment and bill of particulars as amended demonstrate ABP and defendants were operating behind a facade of "business as usual", misrepresenting to the cattle owners their intention and ability to pay for the cattle purchased. The State argues that by contracting to purchase the cattle, ABP implied and pretended (falsely) that payment would be made for the cattle in the regular course of business. It further alleges ABP had no intention to pay when it purchased the cattle and deceived the cattle feeders by pretending to be acting in the ordinary course of business.

The trial court found that the facts alleged in the bill of particulars as amended amounted to no more than a promise to pay in the future, joined with a present intent not to pay for the cattle and the silence of the defendants regarding a material fact, namely, the distressed financial condition of the company. Trial court concluded that

this factual recitation did not sufficiently allege the element of misrepresentation of an existing fact or past event, and dismissed the indictments on the ground that they, even as amplified by the bill of particulars as amended, did not sufficiently allege the necessary element of the crimes charged therein.

From the foregoing rulings by the trial court the State appeals, stating as the sole issue justifying a reversal, its contention that the trial court erred in setting aside the indictments charging defendants with the crime of false pretenses under § 713.1, The Code, 1975 and with the crime of conspiracy to commit false pretenses under § 719.1, The Code, 1975. The State contends the transactions set out in the indictments and the bill of particulars were cash transactions and not credit transactions; that a false promise to pay, coupled with a misrepresentation as to a material past or existing fact, is a false pretense; that the concealment or suppression of the truth can be a false pretense; that a failure to disclose financial condition is a ground for civil fraud or deceit, and that a promise made when the promisor has no present intent to perform, is a false pretense.

We conclude this appeal in reality presents two issues for determination:

1. Does a promise to perform an act in the future, made with no intent to perform, constitute a misrepresentation under the false pretenses statute, § 713.1, The Code?

2. Does the acquisition of property by a buyer pursuant to contract amount to a representation of intent to pay therefor?

I. The trial court bottomed its finding in dismissing the indictments against the defendants on the rationale that the misrepresentation must be of a past or existing material fact, and not of a promise to act in the future. Thus, trial court reasoned ABP though accepting cattle for slaughter with no intention to pay merely promised to pay for the cattle and could not be held guilty of misrepresenting an existing fact. The trial court correctly points out that a pur-

chase in the normal course of business with no intent to pay has never been the basis for prosecution for false pretenses in this jurisdiction. In his order dismissing the indictments, the trial court invites this court to review the Iowa precedent on point in order to "ascertain if and when the precedent has outlived its usefulness." He very properly observed, "Up to this point in time, a false promise generated from a transactional contract between offender and victim, without more, has not been treated as a criminal false pretense in this State. This is also the approach taken in a majority of the jurisdictions. For a contrast of views, see the majority and dissenting opinions in *Chaplin v. United States* [81 U.S.App.D.C. 80], 157 F.2d 697 (D.C.Cir. 1946). Insofar as the trial judge is concerned it is his duty to follow and apply the existing law, \* \* \* "

The Iowa cases addressing this issue are all marked by two characteristics which minimize their value as legal precedent, namely, (1) that the cases failed to base the results on the issue discussed here, and (2) that the cases, all of early vintage, fail to recognize the tenor of present day commercial enterprise. None of the cases hold a charge or conviction of false pretenses invalid because of a failure to allege or prove a misrepresentation of past or existing fact, although the premise appears in the text of the opinions. The median year of the cases cited by the parties is 1900, although many of the cases do not address the issue, but merely list the elements of the offense as including a "misrepresentation of past or existing fact."

The cases which do address the issue directly all involve a finding of a misrepresentation of past or existing fact and accordingly sustain the charges against the defendants. In *State v. Hollingsworth*, 132 Iowa 471, 109 N.W. 1003 (1906), the indictment was found sufficient to charge an offense when it contained an allegation that defendant obtained a loan of money by falsely stating (1) he had arranged to go into business (2) he intended to go into business and (3) he intended to marry. The present fact falsely represented was that he had arrangements to go into business.

In *State v. Fooks*, 65 Iowa 196, 21 N.W. 561 (1884), it was held that defendant's statements that his brother was an English nobleman due to arrive shortly with money to repay the loan sought amounted to a representation that defendant had the ability to repay the loan. The present fact misrepresented was his ability to repay the loan, and his conviction was sustained.

In *State v. Montgomery*, 56 Iowa 195, 9 N.W. 120 (1881) a conviction was upheld where defendant obtained money on the pretense that he had goods to ship by freight, and since he had no such goods that pretense was held to be a representation of present fact.

The case of *State v. Dowe*, 27 Iowa 273 (1869) directly addresses the issue of a false promise as a misrepresentation. In *Dowe* the court held that defendant, who pretended he had arrived to pay his debt induced the victim to sign a receipt for payment. The court found the act of falsely indicating his intention to pay was a false pretense, and reversed the order of the trial court setting aside the indictment.

■ We have concluded we must reexamine our position that a mere promise to pay, with no intent to do so, is not a misrepresentation which will sustain the charge of false pretenses under § 713.1, The Code. The false pretenses statute was adopted to prohibit the fraudulent taking of property. *State v. Sabins*, 256 Iowa 295, 127 N.W.2d 107 (1964). The false pretenses statute provides a criminal sanction against the type of fraud, the obtaining of title and possession of property by deceit. A civil remedy for fraud was in existence long before the adoption of the criminal statute, and provided another potential action which could be based on the same factual situation. The civil action for fraud which could arise from the facts in this case and the false pretenses charges made against the defendants differ mainly in the quantum of proof necessary to prove the charge in the criminal case. The elements of actionability in a civil or criminal case bottomed upon the

same set of facts before us here would be virtually identical. See *Grefe v. Ross,* 231 N.W.2d 863 (Iowa 1975). Therefore, we feel constrained to look to the development of the law in the parallel area of civil fraud in examining our statute on false pretenses, § 713.1, The Code.

The rule in Iowa in civil cases as articulated in *Grefe v. Ross, supra,* permits a finding of actionable fraud where a promise to perform a future act is made with the present intent not to perform. This area of the civil law has developed from the rationale that the present intent of the promisor is a fact about which a false representation may be made. In this connection we note the frequently cited statement by Lord Bowen: "the state of a man's mind is as much a fact as the state of his digestion." *Edgington v. Fitzmaurice,* L.R. 29 Ch.Div. 459, 483 (1885). This court touched upon the foregoing premise by way of dicta in *State v. Huckins,* 212 Iowa 283, 234 N.W. 554, 559 (1931) when we said:

"One's intention or knowledge is a fact as to which we may make a false pretense and thereby (the other elements being present) perpetrate the crime of cheating by false pretenses."

The issue as to whether false pretenses may be predicated on a false promise was the subject of a discussion in *Chaplin v. United States,* 81 U.S.App.D.C. 80, 157 F.2d 697 (1946), 168 A.L.R. 828. A well-written dissent in *Chaplin* makes a persuasive argument in favor of permitting a false pretenses conviction based on a false promise. The federal cases which succeed *Chaplin* decline to follow its reasoning. In a prosecution for mail fraud, the court noted:

"Indeed it has been the law ever since 1896 that to promise what one does not mean to perform, or to declare an opinion as to future events which one does not hold, is a fraud."

*United States v. Grayson,* 166 F.2d 863 (2nd Cir. 1948), referring to *Durland v. United States,* 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896). See also *United States v. Rubinstein,* 166 F.2d 249 (2nd Cir. 1948), cert. den. 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed.

1146 (1948); *United States v. Johnson,* 284 F.Supp. 273 (W.D.Mo.1968).

■ We are persuaded by the reasoning which has led courts to find fraud based on false promises, and note the meticulous tendency of this court in criminal cases in finding statements of present fact out of false promises. In *State v. Foxton,* 166 Iowa 181, 147 N.W. 347 (1914), this court found that the presentation of a personal check implied that defendant had the ability to pay, sustaining a false pretenses charge. We are unable to perceive difference between a finding that the false pretenses may be premised on a false promise and a finding that defendant misrepresented an ability to pay. When a defendant, knowing he is insolvent, promises to pay, he falsely represents his intention to pay. "(I)t is safer for purposes of the criminal law to construe a promise only as an assertion of *ability* to perform, because ability is 'factual' rather than mental. There is little practical difference between these conceptions." A. Pearce, Theft by False Promises, 101 U.Pa.L.Rev. 967, 1008 (1953).

We are constrained to find and now conclude that defendants were properly charged with the crime of false pretenses under the circumstances here; that is to say, where they represented an intention to pay for cattle received by them when they had neither the intention nor the ability to pay therefor. A jury should determine if such representation or promise to pay was made with no intention to perform. We therefore hereby reject any previous position taken by this court that a promise to perform a future act, made with the intent not to perform is not sufficient to support a charge of cheating by false pretenses.

■ II. The defendants argue that the crime of false pretenses must be committed by the making of some positive representation and that silence or concealment is insufficient to justify the charge. We do not agree.

■ The crime of cheating by false pretenses is predicated upon misrepresentation. The misrepresentation may be by

words or action. The failure to disclose a material fact may well be a misrepresentation. In *State v. Foxton, supra,* this court found that the presentation of a check with no expectation that it would be covered is sufficient to support a conviction for false pretenses, even though no representation is made other than that involved in the delivery of the check. We find that no express false representation need be made. In this case the defendants solicited orders for cattle, entered into a contract for the purchase of the same at a stated price and accepted delivery of them. Such action implied the intent to pay for the cattle, and defendants deceived the owners of the same by pretending to be acting in the usual course of business, when in truth the allegations made by the State in the indictments, if proven, would justify a jury in concluding the defendants had no intention to pay for the cattle.

We must therefore conclude and find that the facts alleged by the State in the indictments and the bill of particulars as amended, if proven, constitute the crimes charged. The guilt or innocence of the defendants should be determined by a jury. We therefore reinstate the indictments and reverse and remand for further proceedings.

REVERSED AND REMANDED.

All justices concur except McCORMICK, J., who concurs specially and HARRIS, J., who takes no part.

McCORMICK, Justice (concurring specially).

I concur in Division II and the result.

We have long held that a false representation of fact may occur through conduct which misrepresents ability to pay for purchased goods. *State v. Foxton,* 166 Iowa 181, 147 N.W.2d 347 (1914). Here the State's particulars charge the defendants with purchasing cattle under a "business as usual" facade while secretly diverting funds to preferred creditors, planning bankruptcy and concealing ABP's insolvency. Although the trial court did not think so, I believe these circumstances show a false representation by implication.

This case comes well within the principle that a false promise may be coupled with a false representation of fact to constitute a false pretense. *Pioneer Valley Savings Bank v. Indemnity Insurance Co.,* 225 F.Supp. 404 (N.D.Iowa 1964); *State v. Dowe,* 27 Iowa 273 (1869); *State v. Montgomery,* 56 Iowa 195, 9 N.W. 120 (1881); *State v. Fooks,* 65 Iowa 196, 21 N.W. 561 (1884); *State v. Tripp,* 113 Iowa 698, 84 N.W. 546 (1900); *State v. Hollingsworth,* 132 Iowa 471, 109 N.W. 1003 (1906); *State v. Comes,* 245 Iowa 485, 62 N.W.2d 753 (1954).