STATE OF IOWA, appellant, v. WILLIAM E. TIMMER, appellee.

No. 52362.

(Reported in 151 N.W.2d 558)

JUNE 6, 1967.

Richard C. Turner, Attorney General, Robert N. Merillat, Assistant Attorney General, and Phil Gross, Bremer County Attorney, for appellant.

No appearance for appellee.

GARFIELD, C. J.—This is an appeal by the State from a judgment of acquittal on verdict directed by the court following

trial of indictment charging defendant William E. Timmer with the crime of false pretenses, contrary to section 713.1, Code 1962.

Although defendant was vigorously defended in the district court, we do not have the benefit of a brief for him here.

I. The judgment of acquittal is final as to defendant. However, we will entertain an appeal by the State in a criminal case where it presents a legal question the determination of which will be beneficial, or a guide, to trial courts in the future. See Code section 793.20; State v. Flack, 251 Iowa 529, 530, 101 N.W.2d 535, 536, and citations; State v. Rasmus, 249 Iowa 1084, 1086, 90 N.W.2d 429, 430, and citations. We think this is such an appeal.

II. The indictment, in the language of the statute it is claimed was violated, charges defendant did designedly and by false pretense and with intent to defraud obtain the signature of Mrs. Charles A. Gritzner to a bank check, dated September 25, 1965, the false making of which would be punished as forgery, contrary to section 713.1, Code 1962.

The check, exhibit B, is for $220, payable to American Security Association, signed by Mrs. Gritzner, drawn on her hometown bank. It was given defendant for what Mrs. Gritzner and her husband testify they understood to be the first year's premium on hospital insurance defendant orally represented he was selling them. The writing on the face of the check is defendant's except for Mrs. Gritzner's signature as maker. The check, endorsed "American Security Association, William E. Timmer", was paid by the drawee bank and charged to the maker's account. The word "Benevolent" is omitted from the payee's name on the face of the check and indorsement.

The State's claim is that the evidence shows defendant was not in fact selling the Gritzners hospital insurance but so-called benefits in American Security Benevolent Association which defendant falsely and fraudulently represented was hospital insurance.

Mrs. Gritzner received through the mail a four-page paper, dated November 1, 1965, (exhibit F) designated "Contributing

Disability Benefit Certificate" in American Security Benevolent Association, reciting she is a "Social Member" of the association.

The State offered testimony from Mr. and Mrs. Gritzner and a Logan Kelly of nearby Waterloo to whom defendant made statements like at least some of those made to the Gritzners five days earlier and from whom defendant received a check for $110.

At the conclusion of such evidence the court, on defendant's motion, directed a verdict of acquittal principally on the ground he had "difficulty in concluding that this (exhibit F) is not an insurance contract rather than arriving at what seems to be the far more logical conclusion that it is an insuring agreement and is insurance." The trial court went on to express the view "that this type of public sale should be prohibited." The fact he found no express statutory prohibition against sale of such benefits as exhibit F provides, even if truthfully represented to proposed purchasers, seems to have influenced the court's disposition of the case.

Earlier in the court's ruling he observed, in effect, that if exhibit F is not an insurance contract a jury question would be generated with respect to the false and fraudulent character of the representations made by defendant.

III. We disagree with the view that the "Benefit Certificate" in this "Benevolent Association" may fairly be called a contract or policy of hospital insurance in any true sense.

The certificate provides members of the association will be divided into groups in which each member agrees, within 30 days after notification, to donate $1 to reimburse each other member of the group who becomes hospitalized from accident or sickness. These are other provisions:

"Failure to donate within thirty days will void your membership in the sickness plan * * *.

"The members understand that the * * * Association is not an Insurance Company, but rather a benevolent Association for helping fellow members in times of sickness and accident. As such the Association can not and does not guarantee any rates or benefits and the claimant member receives only what the *members in the group donate.*

· "Each group should consist of approximately 2500 members. * * *.

. "I have agreed with the * * * Association to join their sickness and accident plan. I understand and agree that the * * * Association is not an INSURANCE COMPANY, AND THEY CANNOT GUARANTEE RATES OR BENEFITS."

Payment of.$110 per person for the first year's "dues" and $30 per person for each subsequent year, in addition to donations of $1 for each member of the group who becomes hospitalized, is required.

. In American Security Benevolent Association v. District Court, 259 Iowa 983, 147 N.W.2d 55, 57, 58, we were faced with similar contracts of this same association. The district court there adjudged three of its officers and a salesman in contempt for violating a temporary injunction restraining them from falsely and fraudulently representing themselves as insurance agents for the corporation and from omitting to inform prospective purchasers of the required donations and that payments to a member are not guaranteed to a specific amount but are wholly dependent upon the voluntary contributions of other members. We affirmed the contempt order as to the salesman but found the evidence of violation of the injunction insufficient as to the officers.

Our opinion describes the operations of the association and summarizes the provisions of its contracts much as we have done, supra. These excerpts from the opinion support the conclusion that a "Benefit Certificate" in this "Benevolent Association" does not represent insurance :

"I. American Security is not a fraternal beneficiary association organized under chapter 512, nor a domestic insurance company as set forth in chapter 506, nor is it qualified to contract to sell life, health or accident insurance in Iowa as authorized in chapters 508, 512 and 515, Code, 1966. The contracts offered are not in the nature of insurance contracts as contemplated in those chapters or chapter 514A. * * *

"The corporation's plan or contract is distinguished from insurance on the ground it does not agree to pay a sum of money

upon the happening of a particular event, here death or disability, but promises only to transmit to the claimant such sums as may be received from assessments levied upon members of claimant's group." (Pages 985 and 986 of 259 Iowa)

In fairness to the trial court we may observe that the opinion from which we have just quoted was not filed until several months after the judgment now on appeal was entered.

The conclusion that this association does not sell insurance finds strong support from Securities and Exchange Comm. v. Variable Annuity Life Ins. Co., 359 U. S. 65, 71, 72, 79 S. Ct. 618, 622, 3 L. Ed.2d 640, 644, 645 (1959) which holds variable annuity contracts guaranteeing to the annuitant that upon reaching a specified age he will receive periodic payments, the amount of which is not fixed and has no assured minimum, but will vary according to the wisdom of the investment policy of the issuer, are not contracts of insurance.

This from the cited opinion is applicable here:

"But we conclude that the concept of 'insurance' involves some investment risk-taking on the part of the company. * * * In hard reality the issuer of a variable annuity that has no element of a fixed return assumes no true risk in the insurance sense. * * * For in common understanding 'insurance' involves a guarantee that at least some fraction of the benefits will be payable in fixed amounts. See Spellacy v. American Life Ins. Assn., 144 Conn. 346, 354, 355, 131 A.2d 834, 839; Couch, Cyclopedia of Insurance Law, Vol. 1, §25; Richards, Law of Insurance, Vol. 1, §27; Appleman, Insurance Law and Practice, Vol. 1, §81. The companies that issue these annuities * * * guarantee nothing to the annuitant except an interest in a portfolio of common stocks or other equities—an interest that has a ceiling but no floor. There is no true underwriting of risks, the one earmark of insurance as it has commonly been conceived of in popular understanding and usage. Reversed."

29 Am. Jur., Insurance (1960), section 3, page 434, cites the opinion from which we have just quoted for this, "The concept of insurance has been said to involve some investment risk-taking on the part of the insurer and to involve a guaranty

that at least some fraction of the benefits will be payable in fixed amounts."

44 C. J. S., Insurance, section 1, page 471, cites various precedents in the footnote and pocket part, including the Securities and Exchange Comm. case, supra, for this: "More broadly, however, the term 'insurance,' or 'insurance contract,' or 'insurance policy,' * * * denotes a contract by which one party, for a compensation called the 'premium,' assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency; * * *"

IV. We entertained this appeal largely because we felt it desirable to decide the point considered in the preceding Division III. We will also say, however, we think, as we understand the trial court indicated, jury questions were presented as to whether defendant did represent to Mrs. Gritzner he was selling hospital insurance in this Benevolent Association and, if so, whether the representation was made designedly and by false pretenses, and with intent to defraud, and whether by so doing he obtained Mrs. Gritzner's signature to the check, exhibit B.

In determining the sufficiency of the evidence for submission of these questions to the jury, we view the evidence in the light most favorable to the State and take it, with all reasonable inferences therefrom, as true. State v. Frink, 255 Iowa 59, 64, 120 N.W.2d 432, 435, and citations; State v. Miller, 259 Iowa 188, 199, 142 N.W.2d 394, 401.

There can be little doubt of the sufficiency of the evidence that defendant did make the representation referred to, that it was false and thereby defendant obtained Mrs. Gritzner's signature to the check. Although less clear, we feel there is substantial circumstantial evidence of the fraudulent character of the representation.

The specific intent to defraud may be proven by circumstantial evidence. State v. Comes, 245 Iowa 485, 491, 62 N.W.2d 753, 757; 35 C. J. S., False Pretenses (1960), section 52c, pages 913–915.

The certificate was not issued by the Benevolent Association

or seen by the Gritzners for more than a month after the signature to the check was obtained. Although some of the statements in the certificate were also contained in an application signed by each of the Gritzners, they testified they relied on defendant's oral representations as to the nature of the insurance they believed they were purchasing and therefore did not read the application.

There is evidence defendant concealed from Mr. and Mrs. Gritzner the essential nature of the contracts they were purchasing, including the fact the benefits were limited in amount to the voluntary donations of other members of the group. It is also noted, as stated in Division II, supra, that defendant omitted the word "Benevolent" from the name of the payee in the check. This was also omitted from a printed folder setting out in large type some of the benefits offered and which was shown the Gritzners.

See as to what must be proven to support a charge of false pretenses State v. Hatridge, 252 Iowa 1116, 1119, 109 N.W.2d 705, 707; State v. Pullen, 252 Iowa 1324, 1328, 110 N.W.2d 328, 331, and citations; State v. Comes, supra, 245 Iowa 485, 488–491, 62 N.W.2d 753, 755, 756. See also State v. Sabins, 256 Iowa 295, 127 N.W.2d 107; 35 C. J. S., False Pretenses, section 6, pages 811–813.

Although the present case is not remanded it is reversed because of the error in directing a judgment of acquittal.—Reversed.

All JUSTICES concur.