In re Larry Dean O'BRIEN and Francine Ann O'Brien, fdba O'Brien Electrical Contractors, Inc., Debtors.

Daniel P. ERNST, Trustee in Bankruptcy for Larry Dean O'Brien and Francine Ann O'Brien, plaintiff,

v.

Larry Dean O'BRIEN and Francine Ann O'Brien, and Charter National Life Insurance Company, Defendants.

Bankruptcy No. 83–00187.
Adv. No. 83–0659C.

United States Bankruptcy Court,
N.D. Iowa.

Nov. 14, 1986.

C.J. May III, Dubuque, Iowa, for Trustee Daniel P. Ernst.

R. Fred Dumbaugh, Cedar Rapids, Iowa, for debtors.

Eric W. Lam, Cedar Rapids, Iowa, for Charter Nat'l Life.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS Overruling Objection to Exemption; Denying and Dismissing Fraudulent Transfer Complaint

MICHAEL J. MELLOY, Bankruptcy Judge.

The matters before the Court are the objection of the Trustee to an exemption claimed by the Debtors in a life insurance policy, and a complaint to avoid the Debtors' transfer of proceeds from the sale of real estate into a life insurance policy pursuant to 11 U.S.C. § 548.

The late Judge Thinnes heard testimony on February 27, 1985. The Court also ordered the parties to file briefs at that time. The entire matter was reargued before the

undersigned on April 4, 1986. The Court has reviewed all the evidence and briefs filed by the parties and makes the following Findings, Conclusions, and Orders pursuant to F.R.B.P. 7052. Additionally, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (H).

## FINDINGS OF FACT

1. Larry Dean O'Brien (Debtor) was born on August 31, 1943.

2. Prior to filing bankruptcy, the Debtor earned $50,000 in income in 1981 and $81,000 in 1982.

3. On January 21, 1983, the Debtor sold real estate located in Montana for approximately $42,000.00. Subsequently, the Debtor made a $21,000.00 payment to Transamerica Occidental Life Insurance Company for an individual life insurance policy (Exh. 2) on January 28, 1983.

4. On March 14, 1983, the Debtor sold real estate located in Michigan for approximately $28,000.00. A life insurance policy was purchased from Charter National Life Insurance Company on March 18, 1983 (Exh. 1). This policy was paid for by a single premium in the amount of $25,000.00 and was designated as "single premium increasing whole life insurance". The policy had a face value at the date of issue in the amount of $41,800.00.

5. The owner and insured of both insurance policies was the Debtor and the primary beneficiary of both policies was the Debtor's wife and Co-Debtor, Francine Ann O'Brien.

6. Before filing bankruptcy, the Debtor received from Charter Life two loans upon the "single premium increasing whole life insurance". The first loan was in the amount of $9,000.00 on May 20, 1983; the second was a $10,000.00 loan on July 8, 1983.

7. The Debtor filed this Chapter 7 bankruptcy petition on July 19, 1983.

8. On September 30, 1983, the Debtor received an additional loan on the "single premium increasing whole life insurance" in the amount of $5,000.00.

9. At a hearing on February 27, 1985, the Debtor testified that the insurance was purchased with the intent to protect the Debtor's family and assets. The Debtor further testified that at the time he purchased the Charter Life Insurance policy, he did not anticipate that he would need to borrow from the policy just two months later, but that a delay in going to work created a need for the Debtor to obtain loans from the insurance to meet necessary living expenses. The Trustee disputes the truth of these statements but presented no evidence to refute the accuracy of the statements. The Court has no reason to disbelieve the Debtor in this regard and the Debtor's testimony is accepted as a finding of fact.

## DISCUSSION AND CONCLUSIONS OF LAW

The Trustee's § 548(a) complaint alleges the Debtors' conversion of assets into life insurance constitutes a fraudulent transfer. Implicit within the complaint is the issue of whether the life insurance purchased by the Debtors is exempt from creditors. The Court will address the exemption issue first, since its resolution will affect the outcome of the fraudulent transfer complaint.

### I. *Exemption of Life Insurance*

■ Upon the commencement of a bankruptcy case, the Debtor is allowed to claim exemptions pursuant to 11 U.S.C. § 522. Because Iowa has "opted out" of the federal exemption scheme contained in 11 U.S.C. § 522(d) by its enactment of Iowa Code § 627.10 (1985), the Court must look to the Code of Iowa to determine if the life insurance policy at issue may be claimed as exempt. The applicable Iowa statute is § 627.6(7) (1985), which provides that "[a]ny unmatured life insurance policy owned by the debtor, other than a credit life insurance contract" is exempt. As Debtors' policy is clearly not credit life insurance (insurance to cover a specific loan or obligation), the exemption issue is

whether the Debtors' single premium increasing whole life insurance policy was unmatured on July 19, 1983. Exemption rights in bankruptcy are determined as of the date of filing the bankruptcy petition. *Matter of Hahn*, 5 B.R. 242, 245 (Bkrtcy.S.D.Iowa 1980).

Nowhere in the Iowa common law is "unmatured" life insurance defined. When Iowa enacted legislation to opt out of the federal exemptions, the Iowa exemptions were modified and amended. The exemption found at § 627.6(7) was adopted at that time and appears to be substantially the same as the federal exemptions. *See* 11 U.S.C. § 522(d)(7). The federal exemptions also refer to "unmatured life insurance". However, like the Iowa statute the term "unmatured" is nowhere defined in the Bankruptcy Code.

The only statutory reference this Court has been able to find referring to unmatured life insurance is in the Internal Revenue Code. The Internal Revenue Code has attempted to define life insurance for purposes of determining whether a particular insurance contract will qualify for the favorable tax treatment afforded to life insurance. 26 U.S.C. § 7702(a) states:

> For purposes of this title, the term "life insurance contract" means any contract which is a life insurance contract under the applicable law, but only if such contract—
>
>> (1) meets the cash value accumulation test of subsection (b), or
>>
>> (2)(A) meets the guideline premium requirements of subsection (c), and
>>
>> (B) falls within the cash value corridor of subsection (d).

That section goes on to set forth computational rules for determining whether a policy meets the guidelines set forth in 26 U.S.C. § 7702(a). Those computational rules are found in § 7702(e) which states:

> For purposes of this section—
>
>> (A) the death benefit (and any qualified additional benefit) shall be deemed not to increase,

>> (B) the maturity date, including the date on which any benefit described in subparagraph (C) is payable, shall be no earlier than the day on which the insured attains age 95, and no later than the day on which the insured attains age 100, and
>>
>> (C) the amount of any endowment benefit (or sum of endowment benefits, including any cash surrender value on the maturity date described in subparagraph (B)) shall be deemed not to exceed the least amount payable as a death benefit at any time under the contract.

26 U.S.C. § 7702(e)(1)(B) states that the maturity date shall be no earlier than the day on which the insured attains age 95 and no later than the date the insured attains age 100. Black's Law Dictionary defines the prefix "un" as meaning simply "not". *Black's Law Dictionary*, 5th Ed., p. 1365. By common usage one can assume the phrase "unmatured life insurance policy" means an insurance policy which has not matured. Applying the Internal Revenue Service Code definition of matured would mean that a life insurance policy which otherwise qualifies under the Internal Revenue Code would be unmatured if the insured had not reached the maturity date, which must be between ages 95 and 100.

This analysis of "unmatured life insurance" is consistent with the general understanding of the term in the insurance industry. One of the leading insurance treatises states:

> "There is a difference between a policy that is *paid up* and one that is *matured.* When conditions occur to obligate the insurer to pay the *face amount* of the policy, the contract is said to have matured and, hence, terminated. This occurs in the event of death or when the cash values equal the face amount of the contract [between ages 95 and 100]. Mark R. Greene, *Risk and Insurance* 435 (4th Ed.1977) (emphasis original).

Turning to the insurance policy at issue in this case, the parties do not dispute the fact that the policy qualifies as an insurance contract under the Internal Revenue

Code. While the contract itself does not define maturity date, there is attached to the policy a schedule of premiums and benefits. That schedule shows the cash value which can be borrowed or taken in cash from the policy at the end of each policy year as well as the death benefit payable during the policy year. At all times and ages the cash value is less than the death benefit until year 60 of the policy when the insured reaches age 100. On that date the cash value equals $221,375.00 while the death benefit equals $221,373.00. Thus, the policy is unmatured until such time as the insured dies or attains age 100 and the death benefit (face amount) is payable to the insured.

■ Since the debtor was neither dead nor age 100 on the date of filing, the Court concludes that the single premium increasing whole life insurance policy purchased from the Charter National Life Insurance Company was unmatured, and was exempt pursuant to § 627.6(7) (Code of Iowa 1985) as of the filing of Debtors' Chapter 7 petition.

## II. *Fraudulent Transfer.*

The Trustee alleges in his Complaint that the Debtors' transfer of $25,000 from the sale of real estate to the Charter National Life Insurance Company was made with the actual intent to hinder, delay, or defraud the entities to whom the Debtors were or became indebted, and seeks to avoid the transfer pursuant to 11 U.S.C. § 548(a)(1).

The Debtors acknowledge that the proceeds from the real estate sold by them were converted into exempt property in the form of life insurance policies. The Trustee concedes that the conversion of nonexempt property into exempt property is permissible, even on the eve of bankruptcy. The Court recently reaffirmed this principle in *In re Ellingson,* 63 B.R. 271 (Bkrtcy. N.D.Iowa 1986), which held that the Debtors' payment of over $39,000 toward the contract balance on their exempt homestead, four months prior to the bankruptcy

filing, was not a fraud upon creditors for purposes of 11 U.S.C. § 727(a)(2).

In enacting the 1978 Bankruptcy Code, Congress recognized debtors' rights to convert nonexempt property into exempt property prior to filing a bankruptcy petition. The legislative history is clear that Congress did not intend to change the existing law. Both the House and Senate reports state:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5862. This expression of Congressional intent has been cited with approval in *In re Lindberg,* 735 F.2d 1087, 1090 (8th Cir.1984), *cert. den.* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984).

■ Thus the act of converting nonexempt assets into exempt assets does not, by itself, constitute fraud on the creditors. Extrinsic facts and circumstances must be in evidence which prove that the conversion of the real property proceeds into life insurance was done with fraudulent intent. *In re Breuer,* 68 B.R. 48 (Bkrtcy.N.D.Iowa 1985); *In re Johnson,* 8 B.R. 650 (Bkrtcy.D. S.D.1981). This burden is a very difficult one for the Trustee to prove as it must be proved that the Debtor acted with the intent to hinder, delay, or defraud his creditors.

Rapid conversion of nonexempt assets to extinguish one and reduce another home mortgage, after arranging with creditors to be free of payment obligations until the following year, together with a diversion of daily business receipts into an account unknown to the creditors is an example of the type of conduct which implies actual fraudulent intent. *In re Reed,* 700 F.2d 986 (5th Cir.1983). The *Reed* court pointed out that the evidence amply supported a finding of

a course of conduct evidencing actual intent to defraud. *In re Reed*, 700 F.2d at 991. The court in that case was careful to point out that "while pre-bankruptcy conversion of nonexempt assets is frequently motivated by the attempt to put those assets beyond the reach of creditors, which is the function of an exemption ...", such evidence is insufficient to establish actual intent to defraud creditors. 700 F.2d at 991.

 The Court concludes that the Trustee has not met on this record his burden of showing actual intent to hinder, delay, or defraud. The Trustee argues the Debtor's borrowing against the cash value of the life insurance and the payment of family living expenses with those proceeds evidenced the fraudulent intent. However, the Court does not feel that such a conclusion is warranted from the facts of this case. The payment of everyday living expenses from unencumbered assets of a debtor is not in and of itself fraudulent. There is no allegation in the facts of this case that the Debtor went on a "spending spree", or used the borrowed funds for any purpose other than normal and ordinary living expenses. Clearly, had the Debtor taken the unencumbered cash and paid those expenses without ever purchasing life insurance, such conduct would not have been fraudulent or in any way prohibited. The Debtor's purchase of life insurance and then borrowing the cash value is an unnecessarily complex and less efficient means of keeping cash from creditors than simply spending the money on necessary living expenses without going through the life insurance policy. If anything, this conduct lends support to the Debtor's position that he intended to purchase and keep the policy in effect. That the Debtor bought life insurance supports his representation of an intent to protect his family. No other facts can be construed as evidence of an actual intent to hinder, delay or defraud.

## ORDERS

IT IS HEREBY ORDERED that the objection of the Trustee to the exemption in life insurance claimed by the Debtors is overruled.

IT IS FURTHER ORDERED that Trustee's complaint pursuant to 11 U.S.C. § 548 is denied and dismissed.