In re Gerald G. **BUFFINTON**, Debtor.

Bankruptcy No. 87–01086F.

United States Bankruptcy Court, N.D. Iowa.

Dec. 9, 1987.

Robert A. Dotson, Algona, Iowa, for debtor.

William Thatcher, Fort Dodge, Iowa, trustee.

A. Frank Baron, Sioux City, Iowa, for FLB.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDERS Re: OBJECTION TO EXEMPTION

MICHAEL J. MELLOY, Chief Judge.

The matter before the Court is the objection of Federal Land Bank of St. Paul (FLB) to Debtor's claim of exemption for an unmatured life insurance policy pursuant to Iowa Code § 627.6(6) (1987). This is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(B).

### FINDINGS AND CONCLUSIONS

Debtor purchased a life insurance policy, No. 01309204, from Midland National Life Insurance Company (Midland) with an initial payment of $25,000 on December 9, 1986. Debtor made additional policy payments of $6,000 on February 3, 1987, and $13,700 on April 30, 1987, thereby bringing total payments made on the policy to $44,700. On May 5, 1987, Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

The Midland life insurance policy contained two riders, one which provided for an accidental death benefit and another which established a premium deposit account agreement. The total annual premium due on the policy is $4,042.50, to be paid on January 9th of each year. Any premium payments made before January 9th were deposited into a "Deposit Account" established with Midland pursuant to the terms of the premium deposit account agreement. The pre-paid premiums held in the Deposit Account earned interest at an annual rate of at least 2½ percent. Any premium which was not paid after 31 days from its due date was automatically paid from the Deposit Account. The policy owner could also withdraw funds from the Deposit Account at any time by tendering to Midland a written request for at least $50.

The death benefits payable to Debtor's beneficiaries were conditioned as follows: If Debtor dies in the first year from the effective date of the policy, the beneficiaries receive the amount of the previously paid premium ($4,042.50) plus interest at 4½ percent. If Debtor dies in the second year, the beneficiaries receive $20,000. If Debtor dies anytime after the second anniversary of the effective date of the policy, beneficiaries receive $50,000. In addition, the beneficiaries are to receive the balance of any funds in the premium Deposit Account plus interest of at least 2½ percent regardless of the date of death. At the time of filing the bankruptcy petition, Debtor's policy had been in effect for less than one year and the premium Deposit Account had a balance of $40,657.50.

The payment into the premium Deposit Account does not purchase any additional insurance protection for the Debtor. In the event of death, the amount to be paid to the beneficiary is the same regardless of whether the premium Deposit Account is established or not. The only difference is that the beneficiary of the deceased's estate can withdraw the funds held in the premium Deposit Account plus interest at the time of the Debtor's death; however, the decedent enjoys the same right to withdraw the monies from the premium Deposit Account at any time while he is alive. This provision is unlike a traditional insurance policy where the policy owner borrows against the cash value of the policy and is charged interest by the insurance company on the amount borrowed.

The premium due under the insurance policy was not prepaid by the establishment of the premium Deposit Account. Rather, the premiums are to be charged against this account only after they are 31 days past due. Under the terms of this contract there is nothing to prevent the Debtor from withdrawing the full amount in the premium Deposit Account at any time and letting the insurance lapse when the next premium becomes due. This is not the same as prepaying the insurance premium, whereby the insurance would remain in effect until the entire account had been exhausted.

## DISCUSSION AND CONCLUSIONS OF LAW

■ FLB objects to Debtor's claim of exemption in the Midland life insurance policy on the ground that the policy does not constitute "life insurance" and therefore, is not exempt. Iowa Code § 627.6(6) (1987) states: "A debtor who is a resident of this state may hold exempt from execution the following property: (6) any unmatured life insurance policy owned by debtor, other than a credit life insurance contract." FLB contends that the contract between Midland and Debtor is not solely for "insurance," but also constitutes an agreement for a "passbook account" under the guise of a life insurance policy to provide Debtor a means of exempting cash assets. FLB points out that only the annual premium of $4,042.50 was required to obtain the death benefit coverage under the life insurance provisions of the policy. Any additional advance premium payments were put on deposit with Midland pursuant to the premium deposit account agreement and were not credited as premium payments until 31 days after the annual premium was due. In addition, these funds could be easily withdrawn by making a written request to Midland. FLB requests that the entire policy be held non-exempt as a result of the Deposit Account rider.

Debtor maintains that the entire agreement with Midland constituted life insurance and that he only exercised his option under the policy which allowed him to prepay premiums that would come due in future years. Debtor denies that the premium Deposit Account was set up as a "passbook savings account" and states that this method of payment should not prevent the entire policy from being exempt life insurance under Iowa Code § 627.6(6).

There is no specific definition under the Iowa Code as to what constitutes insurance for purposes of using Iowa Code § 627.6(6). In *Huff v. St. Joseph's Mercy Hospital of Dubuque Corp.*, 261 N.W.2d 695 (Iowa 1978), the court stated:

> Whether the contract is one of insurance must be determined from its purpose, effect, content, terminology, and conduct of the parties, and not from its designation therein, since a contract which is fundamentally one of insurance cannot be altered by the use or absence of words in the contract itself. The court must look also to the intention of the parties in making this determination.

*Huff,* 261 N.W.2d at 700 (Citing 12 Appleman, Insurance Law and Practice, section 7001, page 2). Normally, insurance is considered to be a contract by which one party, for compensation called a premium, assumes particular risks of the other party and promises to pay him or his nominee a certain ascertainable sum of money on a specified contingency. *State v. Timmer,* 260 Iowa 993, 151 N.W.2d 558, 561 (1967). Using these guidelines, the Court finds that the Debtor actually had two separate and distinct contracts with Midland, both of which were contained within the Debtor's policy.

The first contract was for a life insurance policy requiring annual premiums of $4,042.50. The second contract authorized Midland to establish a Deposit Account in Debtor's name into which advance premiums could be paid. The Debtor deposited $40,657.50 with Midland pursuant to this premium deposit account agreement. This account must be treated like any other deposit account the Debtor may have had at a bank, savings and loan, credit union, or other similar financial institution for purposes of the bankruptcy. Deposit accounts are not protected by any Iowa exemption statute, but rather become property of the estate upon the filing of the bankruptcy petition pursuant to § 541(a) of the Bankruptcy Code. As property of the estate, these funds shall be turned over to the Trustee pursuant to § 542(a) of the Bankruptcy Code.

■ FLB's second objection is that even if the entire agreement is determined to be a life insurance policy, it still would not meet the definition of "unmatured" as established in *In re O'Brien,* 67 B.R. 317 (Bankr.N.D.Iowa 1987), and therefore would not be exempt under Iowa Code § 627.6(6). Since it has been determined that the funds on deposit with Midland in

the Deposit Account do not constitute "life insurance funds," the maturity issue as to these funds is moot. The only life insurance contract in existence between Midland and the Debtor was the one purchased with the $4,042.50 premium, so the Court must determine whether this policy is "unmatured."

A life insurance policy is "unmatured" for purposes of Iowa Code § 627.6(6) as long as the cash value is less than the death benefit until the insured reaches age 95. *O'Brien,* 67 B.R. at 319, citing 26 U.S.C. § 7702(e)(1)(B). Debtor's policy was in its first year of effectiveness and would have paid death benefits equal in amount to the $4,042.50 premium plus 4½ interest or approximately $4,224.41. According to the Table on Contract Values found on page 4 of the Debtor's policy, the current cash value of the Debtor's policy in year one is zero. Therefore, the death benefit payable to Debtor's beneficiaries exceeds the cash value of the policy, and, by definition the policy is "unmatured." On the basis of this analysis, the Court finds that the Debtor's life insurance policy purchased with the $4,042.50 premium is "unmatured" and can be claimed exempt pursuant to Iowa Code § 627.6(6). The funds in the Debtor's Deposit Account do not constitute "insurance" under Iowa law, but are property of the estate and shall be turned over to the Trustee.

## ORDER

IT IS THEREFORE ORDERED that FLB's objection to the Debtor's claim of exempt life insurance under Iowa Code § 627.6(6) (1987) is sustained regarding any funds held by Midland in Debtor's premium Deposit Account. The Debtor is ordered to turn over to the Trustee the funds on deposit in the Deposit Account.

IT IS FURTHER ORDERED that FLB's objection is overruled regarding Debtor's life insurance policy purchased with the $4,042.50 premium.

ORDERED.