# IN THE COURT OF APPEALS OF IOWA

No. 14-1128
Filed February 10, 2016

**TERRANCE JERRELL BURNETT,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Pottawattamie County, James M. Richardson, Judge.

An applicant appeals from the denial of his application for postconviction relief. **AFFIRMED.**

Brian S. Munnelly of Munnelly Law Office, Omaha, Nebraska, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Heather Mapes, Assistant Attorneys General, for appellee State.

Considered by Mullins, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, Senior Judge.**

Terrance Jerrell Burnett appeals from the denial of his application for postconviction relief.

## I. Background Facts and Proceedings

Dustin Jones died from a stab wound he suffered while attending a party during the late evening hours of December 11, 2009. On December 23, 2009, Terrance Jerrell Burnett, also an attendee at the party, was charged with first-degree murder. A jury trial was held and on January 21, 2011, the jury returned a verdict of guilty to the lesser-included offense of second-degree murder. The applicant appealed, and the verdict was affirmed. *See State v. Burnett*, No. 11-0361, 2012 WL 836656, at *1 (Iowa Ct. App. Mar. 14, 2012). That opinion recounts the factual situation that will not be restated, except where relevant to the applicable claims raised in this proceeding.

An application for postconviction relief was filed on June 29, 2012, requesting that the conviction be set aside and the case dismissed or, alternatively, a new trial granted. The applicant's postconviction-relief action is based on his contention trial counsel was ineffective for failing to move for a mistrial and in failing to object to certain testimony. He further contends that if no individual claim justifies relief, the cumulative effect of the individual claims taken together justify the requested relief. He finally claims that appellate counsel in his original appeal was ineffective for failing to raise the same issues as raised in this postconviction-relief action. The trial court denied his request. The applicant has appealed.

## II. Error Preservation

Error preservation is generally considered present when the issues to be reviewed have been raised and ruled on by the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Other than the cumulative effect of the various claims, which was not raised before the postconviction court, each claim of ineffective assistance of counsel was raised and carefully considered and ruled on by the postconviction court. For purposes of this proceeding, we will assume individual claims of ineffective assistance counsel preserve their cumulative effect to the extent their cumulative effect may be considered.

## III. Standard of Review

Appeals from the denial of a postconviction-relief application are ordinarily reviewed for corrections of errors of law. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). Denial of effective assistance of counsel raises a constitutional issue, and as such the review is de novo. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

## IV. Discussion

To prevail on a claim of ineffective assistance of counsel a claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance must overcome the presumption that counsel is competent. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation, but only that level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Choices of strategy after proper

investigation are virtually unchallengeable. *Ledezma*, 626 N.W.2d at 143. In reviewing counsel's effectiveness we do not take on the role of a Monday morning quarterback and view the proceedings with twenty-twenty hindsight. *Fryer v. State*, 325 N.W.2d 400, 414 (Iowa 1982). For relief to be granted there must be a determination that but for ineffective assistance, there is a reasonable probability the result would have been different. *Ledezma*, 626 N.W.2d at 145. Counsel is not ineffective for failing to make a meritless claim. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

A. The Prejudicial Clothing

The applicant's family arrived at the courthouse the morning the jury was to be selected. They observed as many as eight of the victim's family seated in the courtroom wearing shirts with the likeness of the victim's face imprinted on the front. There were other unidentified individuals in the courtroom at the time that might have been a part of the jury pool. Prior to voir dire the shirts were observed and the court ordered the shirts removed or turned inside out. The order was obeyed. The applicant contends that trial counsel should have moved for a mistrial because of the shirts.

A spectator's conduct can be grounds for a mistrial, but the conduct must be such as to prejudice the defendant or influence the verdict. *State v. Curtis*, 192 N.W.2d 758, 760-61 (Iowa 1971) (citing *State v. Peters*, 352 P.2d 329, 332 (Haw. 1959)). There is no concrete evidence that any juror saw the shirts in question. Furthermore, there was no evidence that even if seen, why or how viewing a likeness of the victim would have prejudiced the jury. Finally, to the extent the shirts were objectionable, the problem was resolved, even before voir

dire commenced. The court obviously considered its order an appropriate resolution of the problem, and it is highly unlikely it would have granted a motion for mistrial, even if made. Counsel had no duty to make such a motion.

B. Blood or Bloods Issue

The applicant's background indicated he had some relationship with an organization or gang known as the Bloods. Prior to trial the applicant filed a motion in limine in an effort to keep out any suggestion that he was affiliated with the Bloods. The motion was granted with the court noting it was not intending to indicate that things that were a part of the res gestae were not admissible. The court gave the further caveat that if circumstances should change, counsel should approach the court before offering evidence on the prohibited subject.

In the State's opening statement, the prosecutor gave a preview of the anticipated testimony. He stated that immediately after the stabbing one witness would quote the applicant as stating, "He was a Blood. I'll stab him, I'll stab him." The applicant's counsel did not object. In the State's redirect, one of the State's witnesses stated, "I can't recall anything else. Something about blood." Counsel objected and after a sidebar the objection was overruled because there was no linkage between the word "blood" and any gang. The prosecution later asked the witness, "And you heard him say 'blood' as he walked out?" and the witness answered, "Yes. Yes, sir." The applicant's counsel did not further object or move for a mistrial.

In the State's closing argument the prosecution made mention of the demeanor of one of the witnesses, who was a friend of the applicant, stating, "[He] got up here, took the stand wearing that kind of white puffy coat, and he hits

what I like to call the gangster slouch. He gets up there and kind of wants to pose a little bit." The applicant's counsel did not object.

Counsel's objective was to prevent any comment that would indicate the applicant's gang relationship from being inserted into the record. He accordingly made the motion in limine, and we assume it was correctly granted. The applicant's trial counsel testified that he did not object or move for mistrial when references to blood or Bloods were made because he was concerned it would only emphasize what he was attempting to avoid. It was a part of his strategy, and it was effective. An objective reading of the transcript does not imply or even suggest the applicant was a member of the Bloods or any other gang. The prosecutor's opening statement suggested the victim might have been a member of the Bloods, but not the applicant. It is only speculative what impression might have been raised in the jury's mind or what would have been said if objections or motions had followed the statements set out above. Left as they were, there was not even an inference the applicant had any association with a gang.

C. Prosecutor's Alleged Misconduct

The applicant contends the prosecutor's statements, questions, and closing argument constituted prosecutorial misconduct and trial counsel was ineffective for failing to move for a mistrial. In order to obtain relief based on prosecutorial misconduct the applicant must prove both the misconduct and that prejudice resulted. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). It is a duty of a prosecutor to present the State's cases zealously and to attempt to tarnish a defendant's credibility within the proper bounds. *State v. Comes*, 62 N.W.2d 753, 757 (Iowa 1954). Counsel is not permitted during closing

arguments to create evidence or vouch personally as to the defendant's guilt or a witness's credibility based on personal experience or knowledge of facts not before the jury, but he is entitled to analyze the facts and draw conclusions and argue all permissible inferences that reasonably flow from the record. *State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983). To the extent the prosecutor used the word "blood," it was not connected to the applicant's relationship to a gang, nor did it constitute misconduct.

1. Prosecutors Use of the Word "Lie"

The applicant testified that when the victim left the house where they had been partying, he did not know the victim had been stabbed. He also stated that the victim had pulled the knife first and he had only acted in self-defense. His counsel, in a somewhat inconsistent vein, argued in his closing statements the stabbing was done in the heat of passion and if the jury found the applicant guilty of murder, it should only be as to second degree. The prosecutor, in his rebuttal argument, pointed out the applicant's counsel was saying "I hope you believe my client, but if you don't believe my client, then I hope the lie that he told you that—I hope the thing you believe he was lying about was being enraged and in the heat of passion and being seriously provoked." The applicant's counsel asked to approach the bench and the court sustained what was apparently an unreported objection made at the bench and admonished the prosecutor not to use the word "lie." The prosecution restated his analysis and without using the word "lie" in his comments and summed up his contentions by stating, "You can't have it both ways, ladies and gentlemen. Either the defendant's story as he took the stand, was it the truth or it was not the truth?" The applicant's counsel did not object or

move for a mistrial. The use of the word "lie" was unnecessary and unfortunate, but it is highly unlikely a mistrial would have been granted even if a motion had been made by defense counsel. The prosecution was challenging the applicant's credibility based on the record and the inconsistent positions the applicant had taken.

2. Victim's Mothers' Grief

In closing argument the prosecution referred to the victim's mother, who had actually found his body. "No mother should have to find their son lying dead on a darkened sidewalk in the snow, the son that she gave birth to, the same son she tried to breathe life back into his dead body twenty-three years after she gave birth." Prosecutors have a duty to keep the record free from inflammatory utterances. *State v. Werts*, 677 N.W.2d 734, 739 (Iowa 2004). The applicant's counsel did not object or move for a mistrial.

The prosecutor's comments concerning the victim's mother's grief would have been better left unsaid. However, the fact that the victim's mother had found her son's body, her grief, and attempt to resuscitate him were in evidence. Both counsel in argument and the court in its instructions admonished the jury not to decide the case based on sympathy. Even if the statements are considered misconduct, it can hardly be considered prejudicial to the point of having an impact on the overall fairness of the trial. The prosecutor's statement did not introduce any factor into the evidence not already before the court. This one reference to the mother's grief does not even approach the specter of prejudicial misconduct present in *Werts*, 677 N.W.2d at 739, on which the applicant relies.

3. Use of Slides Using the Word "Proven" or Phrase "No Reasonable Doubt"

As a part of his final argument, the prosecutor used slides setting out the elements of the offense followed by the word "Proven" or the phrase "No Reasonable Doubt." Counsel in fact was not improperly stating his own opinion, vouching as to the applicant's guilt, or relying on personal experience or facts outside the record, but was drawing conclusions based on the facts before the jury. Furthermore, the jury was instructed that counsel's statements were not evidence and should not be considered as such. The applicant in his brief appears to concede that the use of the words "Proven" or "No Reasonable Doubt" would have been acceptable when accompanied by the court's cautionary instructions if they had been stated in oral argument. Instead, he contends that to put it in writing and show it as a part of a slide is different and unacceptable but cites no authority for such a proposition. Generally, visual aids can be used to assist in the analysis of the facts in evidence. *State v. Pepples*, 250 N.W.2d 390, 396 (Iowa 1977).

In summary, factors to be considered in determining whether prosecutorial misconduct constitutes the required prejudice are the severity and pervasiveness of misconduct, the significance of the misconduct to the central issues of the case, the strength of the State's evidence, the use of cautionary instructions or other preventative measures, and the extent to which the defendant invited the improper conduct. *State v. Musser*, 721 N.W.2d 734, 755 (Iowa 2006). Overall, the prosecutor's conduct cannot be considered severe or pervasive, and cautionary instructions were used. The evidence of the applicant's guilt, as set

out in *Burnett*, 2012 WL 836656, at \*4-5, was overwhelming. If counsel had moved for a mistrial based on the prosecutor's misconduct or any part thereof, denial of such a motion would have been expected and justified.

D. The Cumulative Effect

The cumulative effect may be taken into consideration when the prejudice prong of ineffective assistance of counsel is being considered. *State v.Clay*, 824 N.W.2d 488, 501-02 (Iowa 2012). The postconviction trial court found no breach of duty on the part of trial counsel and neither do we. The cumulative effect as to the issue of prejudice need not be considered. *See id.*

E. Appellate Counsel's Ineffectiveness

The applicant contends his appellate counsel was ineffective for failing to raise the issues of trial counsel's ineffectiveness. The appellant has failed to establish trial counsel's ineffectiveness. The claim of ineffective appellate counsel necessarily fails.

We affirm the decision of the district court denying Burnett's application for postconviction relief.

**AFFIRMED.**